RHODES v. TURNER et al.

No. 14481.

Court of Civil Appeals of Texas.
Fort Worth.

April 23, 1943.

Rehearing Denied May 14, 1943.
Motion for Leave to File Petition for
Mandamus Overruled July 14, 1943.

W. L. Coley, of Fort Worth, for appellee. J. L. Turner.

Callaway, Wade & Davis, of Fort Worth, for Home Ins. Co., intervener.

BROWN, Justice.

On July 12, 1941, appellee, J. L. Turner, drove his automobile to a public parking lot that was conducted by appellant, T. C. Rhodes, and, as was the custom, delivered his car to a negro employee who worked at the said lot, and the said employee took the car and parked it at some place on the lot and gave Turner the customary claim check or parking ticket which served to identify the delivered car.

As was also the custom and practice, after Turner left the car and went with his family to visit a place of amusement, the negro attendant moved the car to another position on the lot, leaving it facing one of the two public streets that bound the parking lot and at a place where there was no barrier or obstruction of any kind to prevent the car from being driven from the lot and into the street and away, the keys having been left in the ignition lock.

When Turner and his family came back to claim the car, the said negro employee took the claim check, or ticket, and the customary fee for parking the car and after going over the premises announced to Turner that he could not locate the car. The negro told Turner that he had parked the car at a certain spot just about thirty minutes before Turner called for it, showed him the vacant place where he said he had parked the car and said that he did not know what became of it.

Turner, who does not live in the City of Fort Worth, where the parking lot is maintained, made a number of trips to Fort Worth and to Dallas in search of the car. It was finally located in Laurel, Mississippi, and Turner went to such place and found a man incarcerated there who admitted that he stole the car from the said parking lot.

The car had been driven more than 6,000 miles since it was taken from the parking lot.

Turner had insurance on the car, and the insurance carrier paid him the sum of $114.02, which was the estimate made by one of the automobile sales and service companies of Fort Worth, as the amount necessary to repair the damage done to the car in the interim.

McGown, McGown, Godfrey & Logan and John M. Scott, Jr., all of Fort Worth, for appellant.

Turner brought suit against Rhodes and alleged the fact of the ownership of the parking lot, its conduct by defendant, the delivery of the car to defendant's employee, the payment of the parking fee, and that the entire length of the lot fronting on the south line of Sixth Street was kept open, without any rail or barrier being provided at such side of the lot, and that it was maintained so that an automobile could be readily driven in and upon and out and from such lot at any and all points along its said front side with ease and convenience, and that the same conditions exist as to the east line of such lot for more than one-half of its length.

The allegations of the petition are sufficient to set forth a contract of bailment for hire, and plaintiff pleaded that it was the duty of the defendant and his employee in charge of the premises to use and exercise reasonable care and diligence to protect the automobile from damage, theft, pilferage or other injury and to redeliver the same to him in as good condition as said car was when it was delivered to the defendant, but that the defendant failed and neglected to keep proper watch over and care for the car and as a consequence of the negligence and carelessness of defendant, plaintiff's car was taken from the parking lot or driven away without the defendant's employee, to whom it had been delivered, knowing what became of it.

He further alleged that his car was a 1941 Chevrolet sedan, with serial number AA94379 and six cylinders, was in good condition and of the value of $975; that he recovered the auto 30 days after it was taken and found that it had been driven more than 6,000 miles since it was taken from him·and that its parts had been damaged and worn (as shown by an exhibit attached to his petition and made a part thereof) in the estimated value of $115; that merchandise and personal property left in the car of value of $21.59 had been lost or disposed of; and that he had expended much valuable time and money in an effort to find and recover his car, which was shown by the exhibit to his petition and made a part of same.

He prayed for a recovery of all these detailed items and others not necessary to mention.

The exhibit is itemized and is assuredly sufficient to put the defendant on notice of what the plaintiff expects to prove and is attempting to recover.

No special exceptions to the petitions of the plaintiff and intervener appear to have been presented and acted upon.

The defendant set forth a general denial, and specially pleaded that it was his custom, in keeping with the usual and customary business practice incident to the operation of a parking business, to issue a check, or claim ticket, to each person who delivers a car to defendant for parking; but that he does not assume the responsibility for the care and safe-keeping of automobiles or of personal property left in cars, and that he only offers the public the easement and privilege of occupying a part of his premises for a nominal charge, which is fifteen cents when the car is parked for three hours, or less, and twenty-five cents where it is parked more than three hours and less than twenty-four hours; that he delivered to plaintiff the customary claim check which had plainly written upon it the following: "Not responsible in case of fire, theft or for articles left in car"; that plaintiff accepted such claim check and therefore he then and there entered into a valid and binding contract whereby the defendant's liability in connection with the car was expressly limited to the furnishing of a place for parking it, but without any liability, expressed or implied, in the event the car was stolen.

The cause was tried to the court, a jury being waived by all parties, and the court found for plaintiff and rendered judgment of recovery for three pleaded items, viz.: $21.50 for loss of the items of personal property left in the car; $60 for loss of time and expenses necessarily used by plaintiff in searching for the car; and $114.02 for the use and benefit of intervener, Home Insurance Company, to reimburse such intervener for the sum paid by it to plaintiff under the terms of the insurance contract.

Rhodes having appealed contends in his brief that there are three issues, viz.: (1) There was no evidence showing negligence, since the evidence does not show how the car was taken from the lot; (2) that the proof positively shows that the car could have been removed whether the defendant was or was not negligent, and therefore the act of negligence was not, as a matter of law, the proximate cause of

the damage; and (3) there is no competent proof of the elements of damages found by the trial court.

As relating to the first issue, in point one the appellant asserts that there is no evidence in the record tending in any way to show whether or not his employee kept a proper lookout for the safety of the car and the finding of negligence is not supported by a scintilla of evidence.

■ We see no merit in the contention. The testimony shows that on one entire side of this parking lot, it is maintained without rails or barriers of any kind and so constructed that cars may be driven into the lot and from it at any point or place and onto the adjoining public street, and that one-half of another side of the lot is similarly maintained and constructed.

It is testified to that there was only one person on duty at the lot; that the attendant not only left the ignition key in the auto lock but that when the attendant could not locate the car, he told the plaintiff he had moved it about thirty minutes before it was called for, and he had placed it next to the street, where the evidence shows it was easily driven from the lot by any one who cared to drive it off, and the attendant pointed out the exact spot where he said he had parked it; the place at that time being unoccupied by any car.

The testimony shows that the defendant owns and operates another parking lot just across the street from the one involved in this suit.

Rhodes testified that it was the duty of his attendant "to take care of cars when they went in there, to park them and protect them so far as they could protect them at all times". At another time he testified that the negro attendant's duties were "to park cars, get out cars when the customers come, and to watch the lot".

The testimony shows that it was defendant's theory that the car was stolen and the subsequent facts prove that his theory was correct. He even advanced the theory that some soldier had taken the car and said that this was being done and that doubtless the car would be found in another parking place, or abandoned on the street at some place.

Appellant seems to contend that it was the duty of the plaintiff to account for the whereabouts and actions of the negro employee, from the time he says he last parked the car, at a particular place, up and until the owner called for his car.

■ We see no merit in the contention; and we see no merit in the second point urged under the second issue raised, to the effect that the evidence discloses that the thief could have slipped into the lot and driven the car off whether or not a proper lookout was maintained, and that this negatives, as a matter of law, the existence of proximate cause.

We are here dealing with negligence because of the omission to perform a duty and not with negligence in the commission of some act.

Taking all of the facts disclosed by the evidence and the statements made by the negro attendant, we cannot say that there is not a scintilla of evidence to support the trial court's finding that the employee did not keep a proper lookout for the safekeeping of plaintiff's car.

■ The mere fact that the defendant testified that it was possible for a thief to sneak upon his parking lot and get in a car and drive it from the premises even when his attendant was watching the cars and that this could be done and his attendant could not prevent it, does not, as we see it, relieve the defendant of his responsibility and negative the existence of proximate cause as a matter of law.

■ Rather does it occur to us that, if the defendant knows such a condition exists at his public parking lot as he was then and is now operating it, there devolves upon him a degree of care in the protection of his customers' cars that is commensurate with the danger of loss to which his parking place evidently subjects his patrons' cars. Crawford v. Hall, 56 Ga. App. 122, 192 S.E. 231.

Points three and four contend: (3) The proof does not show the market value of the car at the time of its loss and therefore does not sustain a finding of damages to the car amounting to $114.02, and (4) the proof does not show facts necessary to award damages for plaintiff's loss of time and expenses in searching for the car, and inasmuch as the trial court found that such search was not necessary and did not result in a return of the car, such expenses are not recoverable in any event.

The car was recovered but was damaged, as alleged, and had to be repaired in order to put it in good condition.

Assuredly, the plaintiff could not be heard to ask for the value of the car as if it had been converted, and the fair, equitable and just basis of recovery was whatever amount was necessary to put it in the condition in which it was when taken from the parking lot.

When we take into consideration the make and model and year of make of this car, the fact that it had been driven only about 19,000 miles, that it was shown to be "in good condition" when it was parked with appellant, and what the estimate was covering the necessary repairs, and that a reputable concern made such estimate, and that the insurance carrier paid such sum and accepted such estimate as being fair, and when we further take into consideration the cost of the car when purchased, and the testimony of the Insurance Adjuster as to the market value of the car and that it was worth $800, less the amount that was paid to restore it to its original value (meaning $114.02 paid to Turner), we cannot say that there is no evidence of probative force to sustain the judgment.

The Supreme Court, speaking through its Commission, in an opinion by Mr. Justice Smedley, Simmonds et al. v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332, 335, opinion adopted, has reviewed many decisions and has laid down a most wholesome rule flavored with an abundance of common sense.

The cited case was one for the recovery of the value of a mule killed by the railroad, and the opinion states:

"From the authorities above discussed and quoted, we conclude that juries in weighing opinion testimony and reaching their verdicts, when all or most of the evidence on the particular issue is of such character, may, and, as Justice Field said, must act intelligently, give effect to the testimony by applying to it, and considering it in the light of, their own general knowledge and experience in the subject of inquiry.

"There was in this case no evidence as to the size, age, disposition, or other characteristics of the mule to aid the jury. Their problem was simply to find the value of an ordinary gray mule. They had the plaintiff's opinion of the value, but his judgment is not to be substituted for theirs.

"The subject is not one for experts, but is one about which a jury may be assumed to have, or be able to form, correct opinions of their own. In such case, while they are not bound by it, the jury may not disregard the plaintiff's opinion, but in valuing that opinion and in arriving at their verdict, they have also for guidance, and should be influenced by, the plaintiff's interest in the result of the suit and their own common sense, experience, and knowledge of the subject. This being true, the jury's finding as to the amount of damages was not without evidence to support it, and the trial court was not authorized by the amended statute to disregard the finding and substitute for it the opinion of one of the plaintiffs."

Assuredly, we may ascribe to the trial judge who heard the instant case as much common sense, experience and knowledge of the subject that was before him as is in such apt words ascribed to the jurors in the cited case.

Appellant strenuously urges that the trial court found that it was not necessary for plaintiff to expend time and money in searching for the car and that such expenditures of time and money did not result in the return of the car, and that therefore the trial court erred in awarding judgment for these items.

We believe that it was the duty of plaintiff to do all that was reasonable in an effort to find and recover his car. Had he failed to put forth such efforts, it could have happened that the car would have been a total loss.

We believe the trial court, under the rule noted in the cited case, had evidence before him to support the judgment rendered.

All assignments of error are overruled and the judgment is affirmed.

McDONALD, Chief Justice (dissenting).

I respectfully enter my dissent. The question of proper lookout, in various phases, arises frequently. It seems to me that the majority opinion goes considerably beyond any of the decided cases in holding that the evidence in the case before us will support findings of failure to keep a proper lookout, negligence, and proximate cause.

As I see it, the case boils down to this. What was the negro attendant doing, or failing to do, with respect to keeping a lookout, at the time the car was stolen; was his conduct negligent; and was his

negligence a proximate cause of the loss? There is no causal connection between his acts before, or his acts after, the theft of the car. The only ground of liability sought to be established by plaintiff's pleadings, or by the findings of the trial court, is that this particular negro attendant negligently failed to keep a proper lookout for the parked car.

I consider that the evidence tends to show that the attendant did not see the car at the time it was stolen—in fact, his words and conduct at the time plaintiff came for the car seem conclusively to demonstrate that the attendant did not see the car when it was stolen, and that he did not know that it had been stolen until plaintiff came after it.

Next, we may inquire, what does the proof show with respect to whether the attendant was negligent, at the exact time of the theft, in not watching the car? It is my opinion that the evidence shows nothing one way or the other with respect to this, and that we must resort to conjecture and speculation in order to find that the attendant was negligent at that particular time. We might speculate that the attendant was in the little house on the lot at the time, or that he had gone across the street to buy a cold drink, or that he was on the opposite side of the lot talking to friends, or that he was doing any one of countless things other than performing his duty of watching the car. Or, we might speculate that his duties had called him to another part of the lot where, for a moment, he could not see plaintiff's car, or that for a moment he was busily engaged in parking another car, or that he was delivering another car to its owner, or that he was doing some other act in the performance of his duties that would necessarily divert his attention for a short time from plaintiff's car.

Plaintiff's pleadings and the findings of the trial court will not permit us to impose liability upon the defendant because the ignition key was left in the car, or because there were not more attendants on the parking lot, or because of the construction and location of the lot and its driveways. Liability must be imposed, if at all, solely upon the ground that this particular negro attendant was failing to exercise ordinary care in the performance of his duty of watching plaintiff's car, at the very time the car was stolen. We do not know, from the evidence in the record, what the negro attendant was doing when the car was taken. Not knowing what the attendant was doing, we have no basis upon which to compare his conduct with that of the average prudent man under the same or similar circumstances.

To quote from Phillips v. Citizens' Nat. Bank, Tex.Com.App., 15 S.W.2d 550, 552, where the loss of certain property was involved: "Now the mere happening of an accident not only does not show negligence, but it does not tend to do so. It is no evidence of negligence."

In Wells v. Texas Pac. Coal & Oil Co., Tex.Com.App., 164 S.W.2d 660, 662, it is said: "It is familiar law that negligence is never presumed, and that the mere happening of an accident is no evidence at all of negligence."

To the same effect are the decisions in Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Davis v. Castile, Tex.Com.App., 257 S.W. 870; Paris & G. N. R. Co. v. Stafford, Tex.Com.App., 53 S.W.2d 1019; Gulf, M. & N. R. Co. v. Wells, 275 U.S. 455, 48 S.Ct. 151, 153, 72 L.Ed. 370. The language of the last cited case is applicable to the case now before us: "In no aspect does the record do more than leave the matter in the realm of speculation and conjecture. That is not enough."

In 26 A.L.R. 223 and in 48 A.L.R. 378 will be found citations of many cases bearing on the liability of a bailee where the subject of the bailment is stolen. In 34 A.L.R. 925 and in 131 A.L.R. 1175 will be found citations of many cases bearing on the liability of the proprietor of a parking lot for loss or damage to automobiles left in the parking lot. While some of the courts appear to hold that a presumption of negligence on the part of the bailee arises from proof of the bailment and failure to return the subject of the bailment, it seems definitely to be the rule in Texas that the burden is upon the bailor to prove the negligence, at least where it is shown that the failure to return the property is due to its destruction or theft. Exporters' & Traders Compress & Warehouse Co. v. Schulze, Tex.Com. App., 265 S.W. 133; American Express Co. v. Duncan, Tex.Civ.App., 193 S.W. 411; Staley v. Colony Union Gin Co., Tex.Civ. App., 163 S.W. 381; Munger Automobile Co. v. American Lloyds of Dallas, Tex. Civ.App., 267 S.W. 304; Leonard Bros. v. Standifer, Tex.Civ.App., 65 S.W.2d 1112.

The last three cases concern thefts from the bailee, and the Leonard Bros. case is from this court.

The bailor in this case did not rest his case upon a presumption of negligence arising from the mere fact that he delivered the automobile to the bailee and that the bailee failed to return it. He alleged that the loss of the automobile was caused by the bailee's negligence, alleging in particular the manner in which he, or rather his servant, was negligent. As I see it, he failed to prove the case he alleged.

I think, therefore, that the judgment of the trial court should be reversed and judgment here rendered for the appellant.

### On Motion for Rehearing

BROWN, Justice.

The majority are convinced that we should follow the rule established by the Federal Courts and more than one-half of the State Courts of America.

In this case the property was delivered to the bailee to be kept by him and redelivered to the bailor for certain hire and reward. When the bailee failed to redeliver the car upon demand, the burden then rested upon him to explain his failure to return the property, and that such failure was not occasioned by his negligence.

See Vol. 8, C.J.S., Bailments, page 341, § 50 subsec. b, and footnote 78, in which are cited, Harper v. Merchants & P. Nat'l. Bank of Mt. Vernon, Tex., 68 S.W.2d 351, writ dismissed, and Cluer v. Leahy, 44 Idaho 320, 256 P. 760; Schrowang v. Von Hoffman Press, Mo.App., 75 S.W.2d 649; State ex rel. Schrowang v. Hostetter, 337 Mo. 522, 85 S.W.2d 417; Workingman's Club v. Boguszewski, Sup., 161 N.Y.S. 382; and Hilton v. Wagner, 10 Tenn.App. 173.

The text above cited, under the same paragraph (50), states that the rule adopted in the modern decisions is that the proof of loss or injury establishes a sufficient prima facie case against the bailee to put him on his defense, and that where chattels are delivered to the bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes the bailee's negligence or other fault to be the cause, and casts on the bailee the burden of showing that the loss was due to other causes consistent with due care on his part.

In support of this rule the text cites decisions from 28 States and a number of United States Courts; the States being Alabama, Arkansas, Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maine, Michigan, Minnesota, Missouri, Montana, New Jersey, New York, Nevada, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas (Leonard Bros. v. Standifer, Tex.Civ.App., 65 S.W.2d 1112 and Skrobarcek v. Raborn Chevrolet Co., Tex.Civ.App., 45 S.W.2d 1110), Washington, and West Virginia.

See Vol. 8, C.J.S., Bailments, § 50, page 343, footnote 87, in which scores of cases from the named jurisdictions are cited supporting the rule.

As was said in Lemnos Broad Silk Works v. Spiegelberg, 127 Misc. 855, 217 N.Y.S. 595, 598, the rule is bottomed, as in most rules of the common law, upon nothing more nor less than common sense, that: "It is a rule which is founded upon necessity. In other words, the common law, with its characteristic horse sense, makes a virtue out of necessity, growing out of the fact that, where the bailee has exclusive and undivided possession of the goods, he must also have the exclusive means of showing what became of them."

As a further illustration of the testimony that fell from the lips of the defendant, the record shows that he was not on the parking lot when the car was stolen and that he did "not know how the car got away"; that there is no part of the lot that is not lighted at night so that a car cannot be seen from the "office" on the lot; and when he was being interrogated about whether or not he, the defendant, could have seen the car when it was taken, he was asked if he were there at the time, if he could not have seen the thief take the car, and he answered: "I might have seen him, because I would have been watching. But you might have had a watchman there and he might not have seen him."

The latter part of this answer can mean nothing more nor less than that the watchman might not do his duty.

When asked if he had a watchman at the west end of the lot the defendant answered that he did not have then and never will have one.

The motion is overruled.