## ABLON v. HAWKER.
### No. 13745.

Court of Civil Appeals of Texas. Dallas.
Jan. 24, 1947.

Rehearing Denied Feb. 28, 1947.

Emil Corenbleth and Sam Passman, both of Dallas, for appellant.

Bailey & Milam, of Dallas, for appellee.

BOND, Chief Justice.

On September 29, 1945, and for more than a year prior thereto, appellant Bernard Ablon was operating a public automobile garage or parking station on Pacific Avenue, in the City of Dallas, known as the Republic Garage, charging a scale rate based on the length of time automobiles were parked therein. The garage is a two-story brick building, facing Pacific Avenue and extending back to Elm Street, with a public foot passageway leading through the building. The front of the lower, or first floor, where automobiles enter, is without a wall and not equipped with doors or shutters or obstructions and with no means of closing the garage; it being what is commonly termed an open garage. Inside the building, about fifty feet from the entrance and hanging from the ceiling in plain view from the entrance, was a sign 15 by 25 inches with four-inch lettering, reading: "Garage closes at 7:30 P.M. Cars left after this at owner's risk;" and another that the owner of the garage would not be liable for loss by fire, storm or theft. About 4:00 or 4:30 on the afternoon of said day, appellee H. W. Hawker, the owner of a 1941 model Buick sedan automobile, drove his automobile to the entrance of the garage and there delivered it to an attendant of appellant for storage. The attendant, in accepting the automobile, gave appellee an identification or claim check, or stub, which appellee accepted, putting it in his pocket without reading, or asking for or receiving any information

as to the conditions of such bailment; and walked away from the entrance without going into the garage or observing the signs in the garage. On the check, or stub, which was detached from a similar check or stub retained by the attendant, was a condition or limitation of liability, reading: "Republic Garage. Safe inside parking. 1312 Pacific Avenue. Dallas. Not responsible for damage by fire, theft, storm, accident, or articles left in car. Telephone R-0454. 7800."

It is undisputed that appellant's garage was operated on daylight schedule, opening at 8:00 A.M. and closing at 7:30 P.M., and that there was no employe or watchman on duty after closing hours; nor had such ever been employed. And there is no evidence that any garage similarly situated maintains watchmen. Mr. Ablon, at 7:45 P.M., was the last person leaving the premises and, as was usual and customary when customers' cars were in storage at time of closing, he placed the key to the ignition lock of appellee's car over the sun visor, above the windshield, and left a note therein reading: "Please deposit 30 cents in this envelope, along with your car stub, and push it across counter so it will fall on floor." Sometime during the night, about 9:00 o'clock, the automobile was stolen from the garage and damaged —and the thieves apprehended. There is no question but that the automobile was damaged as the result of the theft; also that there was no barrier or obstruction of any kind to prevent the car from being stolen.

Appellee's suit, primarily, is based on a contract of bailment for hire, on the theory of presumptive negligence; and, in the alternative, for damages occasioned by defendant's failure to exercise ordinary care in the following particulars: "(1) Defendant failed to have an attendant on duty in said garage while plaintiff's automobile was stored therein. (2) In the alternative, the attendant or attendants on duty in said garage failed to keep a proper lookout for the protection of plaintiff's automobile. (3) That the defendant failed to have said garage or storage space enclosed so as to prevent strangers from entering the premises and removing plaintiff's automobile therefrom. (4) That the defendant failed to have the entrance to such garage locked while an attendant was not on duty so as to prevent strangers from entering said premises and removing plaintiff's automobile therefrom."

On trial to the court without a jury, a judgment, not stating on what theory it was based, was entered for the plaintiff for $1,018, with legal interest and all costs of suit. The defendant appealed.

We think it is settled in this State that in suits on contracts of bailment for hire, where the property is lost or damaged by fire or theft, no presumption of negligence is imputed to the bailee, and that the burden of proof to show bailee's negligence resulting in such loss or damage, rests on the bailor. Exporters' & Traders' Compress & Warehouse Co. v. Schulze, Tex.Com. App., 265 S.W. 133; American Express Co. v. Duncan, Tex.Civ.App., 193 S.W. 411; Munger Automobile Co. v. American Lloyds of Dallas, Tex.Civ.App., 267 S.W. 304; Leonard Bros. v. Standifer, Tex.Civ.App., 65 S.W.2d 1112. In the case at bar, the automobile having been damaged as a result of theft, plaintiff having failed to plead negligence in connection with his primary cause of action, it cannot be presumed that the trial court's judgment rests on the contract of bailment.

Negligence in fire, theft, storm or accident cases, is never presumed, and the mere happening of damage by such means is no evidence of negligence. Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660; Phillips v. Citizens' National Bank, Tex.Com.App., 15 S.W.2d 550; Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195. Negligence is a positive matter, and, before it can be imputed to a party to a suit, facts must be alleged and proved showing negligence, or circumstances must be shown from which negligence may be reasonably inferred, and that such negligence was the proximate cause of the injury complained of. Exporters' & Traders', etc., v. Schulze, supra. So, in the case at bar, if appellant is liable at all for the damages to appellee's automobile, it must be held on his alleged alternative pleadings and proof of negligence in the particulars alleged; that is, negligence because of the omission of having an attendant on duty in said garage, or having bar-

riers or obstructions "to prevent strangers from entering the premises and removing plaintiff's automobile therefrom;" and that such negligence was the proximate cause of the theft and damage.

It is possible that appellant did not use ordinary care in the manner in which he maintained the premises; that the front of the building should have had doors or shutters, or some kind of barrier or obstruction to keep "strangers," as appellant alleges, "from entering the building," or should have had "some attendant on duty" while appellee's automobile was in storage. However, the condition of the premises was open to appellee, which he saw, or could have seen by casual observation, or the asking of questions seeking information. The building was not equipped with door or shutters; an open foot passageway extended through the building from Elm Street to Pacific Avenue, for use of patrons and public, and appropriate signs were placed in conspicuous places limiting the owner's liability. So, we think the mere fact that appellant failed to have precautionary measures to prevent "strangers" from entering the premises shows no active negligence. Such failure of duty, if any, does not necessarily imply that appellant was guilty of ordinary negligence to prevent "theft" and that same was the proximate result thereof.

"Where the relation of bailor and bailee for hire or mutual benefit subsists, it devolves on the bailee to use ordinary care and diligence in the safeguarding of the bailor's property. If it is lost through a failure to observe such duty, he is answerable, but of course he is not responsible for any losses not occasioned by the ordinary negligence of himself or his servants; he will not, therefore, be liable for any loss by thieves, or for any taking from him or his servants by force." 3 R.C.L. 96, Sec. 23. By ordinary care, as the term is used in reference to a bailee's duty, is meant such diligence as an ordinarily prudent person exercises in matters of his own business under like circumstances. Thornton v. Athens Nat. Bank, Tex.Civ.App., 252 S.W. 278; Staley v. Colony Union Gin Co., Tex. Civ.App., 163 S.W. 381.

Then, too, parties to a bailment may and frequently do make special contracts limiting liability, when not contrary to public policy or statute, and the responsibility will be measured and determined by the terms of such contract. "The bailee may, by special contract, be relieved of all liability due to his or her employee's want of care, except gross negligence." 5 Tex. Jur. 1026, Sec. 16. The "express agreement determines the rights and liabilities of the parties arising from the bailment." Direct Nav. Co. v. Davidson, 32 Tex.Civ. App. 492, 74 S.W. 790, 791; Sanchez v. Blumberg, Tex.Civ.App., 176 S.W. 904. The stub or claim check given to Mr. Hawker limited the bailee's liability; in effect, took into consideration the condition of the premises and manner and method of operating the garage. Indeed, such did not imply limitation for gross negligence, or negligence done outside of the usual and customary way of handling such business. The mere fact that the bailor failed to read the liability limitation plainly printed on the stub, or to observe the signs plainly visible in the garage, does not, in the least, excuse him from culpable assumption of the risk because of appellant's omission to have the premises secure from thieves. Undoubtedly appellant had a legal right to operate an open garage and, in doing so, limit his liability by contract for damage occasioned by theft or fire. He did so, and gave appellee the conditions by which he accepted the bailment. Courts cannot make contracts for the parties.

We think that the undisputed evidence, as a matter of law, acquits appellant of actionable negligence, and that the judgment of the court below should be reversed and here rendered for appellant. It is so ordered.

LOONEY, J., dissents.

LOONEY, Justice (dissenting).

I dissent from the decision of the majority in reversing this cause on the facts and in rendering judgment for the appellant. As disclosed in the majority opinion, the case is one of bailment for hire—was tried without the intervention of a jury and resulted in judgment below in favor of H. W. Hawker, the bailor, against Bernard Ablon, bailee, for the sum of $1,018.09. Findings of fact and conclusions of law

were neither requested by counsel nor filed by the court; but the record contains a statement of the facts which, in my opinion, reveals ample evidence showing that appellant bailee failed to exercise reasonable care under the circumstances to properly care for the car and safeguard it against theft. In the situation presented, every reasonable inference of fact supported by evidence will be drawn in support of the judgment below. See 3 Tex.Jur., Appeal and Error-Civil, sec. 747, p. 1059; Houston Oil Co. v. Biskamp, Tex.Civ.App., 99 S.W.2d 1007.

The material facts are these: On September 29, 1944, at about 4:30 P.M., appellee Hawker, a resident of the town of Teague, Freestone County, drove his automobile into the Republic Garage, on Pacific Avenue in the City of Dallas, owned and operated by Bernard Ablon, the appellant; delivered same for storage to an attendant in the garage, who gave appellee an identification check containing certain printed matter stating, among others, that the owner of the garage would not be responsible for loss by fire, theft, etc. Without reading the printed matter, appellee put the check in his pocket and left the garage without reading any of the signs hanging in the garage stating that it closed for business at 7:30 P.M. and that cars left thereafter would be at owner's risk; nor did he read the sign stating that the owner would not be responsible for loss by fire, theft, etc., nor were these signs or the contents thereof brought to appellee's attention at the time. Appellee was a stranger, resident of another county, had not previously patronized appellant's garage; did not know and was not informed, and certainly was not visited with constructive notice, that the garage would be left open at night without shutters, chain or other barrier across the entrance, and without an attendant or watchman, to properly safeguard cars in the garage from being stolen.

It was shown that on the occasion in question, the garage closed at 7:30 P.M. and the entire personnel, except appellant, left the garage; he remained until about 7:45, placed the keys belonging to appellee's car (which was left on the main or first floor) on the sunshield or visor of the car; also a note was left in the car directing appellee where to deposit the charges due.

About 9:00 P.M., same evening, appellee returned to the garage for his car; the garage was deserted and the car could not be found. At about 7:00 A.M. next morning appellee was informed by policemen of the City that they found the car on a street the night before; that it had been stolen from the garage and badly wrecked. Two girls were in the car when found by policemen, but their boy companions had fled. Appellee found his car in a garage where evidently the officers had placed it, and as heretofore mentioned, in a badly wrecked condition.

The facts in this case, in my opinion, bring it under the doctrine announced in Exporters' & Traders' Compress, etc., v. Schulze, By the Commission, approved by the Supreme Court, 265 S.W. 133. I realize that under the facts and circumstances, the burden rested upon appellee to show that theft of the car in question was the result of appellant's failure to exercise reasonable and ordinary care for its protection against theft and resulting damage; and I submit, without discussing the facts, that this burden was fully discharged by the facts just detailed.

A recent case very much akin to the instant case, decided by the Fort Worth Court of Civil Appeals, in which the bailee was held liable, was Rhodes v. Turner, 171 S.W.2d 208. Owing to the dissent of McDonald, C. J., the bailee sought to have the points of dissent certified to the Supreme Court, as provided in Rule 463, and brought a mandamus proceeding for that purpose. The motion for leave to file an original petition for mandamus to compel the court to issue the certificate was denied (1) because it appeared from the facts stated in both majority and dissenting opinions that the case turned on the sufficiency of evidence to support the judgment; and, furthermore, it did not appear that the majority opinion was incorrect. See Rhodes v McDonald, 141 Tex. 478, 172 S.W.2d 972.

As heretofore mentioned, at the time appellee delivered his car to the garage, he was given an identification check containing printed matter reading as follows: "Republic Garage. Safe inside parking.

1312 Pacific Avenue. Dallas. Not responsible for damage by fire, theft, storm, accident or articles left in car. Telephone R-0454. 7800." Construing this language, the majority, in my opinion, gave to it a breadth, comprehension and significance not warranted by the restrictive terms used. Referring to this check, the majority states: "The stub or claim check given to Mr. Hawker limited the bailee's liability; in effect, took into consideration the condition of the premises and manner and method of operating the garage. Indeed, such did not imply limitation for gross negligence, or negligence done outside of the usual and customary way of handling such business. The mere fact that the bailor failed to read the liability limitation plainly printed on the stub, or to observe the signs plainly visible in the garage, does not, in the least, excuse him from culpable assumption of the risk because of appellant's omission to have the premises secure from thieves. Undoubtedly appellant had a legal right to operate an open garage and, in doing so, limit his liability by contract for damage occasioned by theft or fire. He did so, and gave appellee the conditions by which he accepted the bailment. Courts cannot make contracts for the parties. We think that the undisputed evidence, as a matter of law, acquits appellant of actionable negligence, and that the judgment of the court below should be reversed and here rendered for appellant. It is so ordered."

■ The doctrine announced by the Supreme Court, answering certified questions in Langford v. Nevin, 117 Tex. 130, 298 S.W. 536, 537, in my opinion, is a complete answer to the reasoning just quoted from the majority opinion. The Supreme Court said: "Whether or not one engaged in conducting a garage, as a business, for the storage or repair of automobiles for people generally, for compensation, may, without contravening public policy, contract for exemption from the exercise of ordinary care with respect to the safety of an automobile intrusted to him in the course of the business, has not been settled in this state. A disposition of the present case does not require a determination of the question, and for this reason an opinion in that regard is reserved. Granting, however, that such an exemption may be effected by special contract stipulation in a case of this character, the language of the stipulation must be clear and unambiguous. Ordinarily, in cases of this kind, men do not intentionally subject their property to the hazard of being lost through lack of ordinary care to prevent the loss. A provision of the bailment contract which subjects the property to such a hazard is unreasonable. Therefore a provision which is relied upon by the bailee as exempting him from the exercise of ordinary care with respect to the safety of the property will be strictly construed by the courts, and will not be interpreted as effecting the exemption if any other meaning may reasonably be ascribed to the language employed. In cases of bailment having the general aspects of this one, a contract provision, which purports to exempt the bailee from liability for loss due to particular causes other than the negligence of the bailee, does not in any respect exempt him from the implied obligation of ordinary care which his relation to the bailed property, as bailee for hire, imposes upon him." (Citing numerous authorities.) Therefore, I submit that as to the liability of appellant, the judgment of the trial court is amply sustained by evidence.

As the majority reversed and rendered the case on the facts, denying liability, the other questions presented by appellant were not discussed or disposed of. If I have successfully sustained the dissent and shown that the facts fully warranted the trial court in finding liability, the other two questions should be disposed of, which I shall now endeavor to do.

In points "Third" and "Fourth" appellant contends that his request for permission to withdraw his announcement with leave to amend, in order to bring in the American Automobile Insurance Company as a new party, should have been granted and that the court erred in refusing such request.

■ The record discloses that the trial of this case was begun on March 11, 1946, and some evidence was introduced at that time; later, on March 15th, additional evidence was heard. It was shown that appellee held a policy issued by the American

Automobile Insurance Company which provided for subrogation "in the event of any payment under this policy, etc." Appellee testified that the insurance company paid him $993, the amount of loss sustained by injuries to his automobiles; and that any recovery in the case, except $25, would belong to the insurance company. It was not disclosed that any formal assignment of the claim was made by appellee to the insurance company, but it seems that payment of the loss by the company operated as an equitable assignment. 26 C.J., § 621, p. 458; 46 C.J.S., Insurance, § 1212, p. 181.

After appellee testified, as just stated, appellant, claiming surprise, asked permission to withdraw his announcement; that he be permitted to amend his pleadings in order to make the insurance company a party to the suit; and at this juncture also demanded a jury. These requests were denied by the court.

■ Appellant's claim of surprise, in my opinion, is not well founded, as the record discloses that on February 2, 1945, over two months before the institution of the suit, and over a year before it was tried, the adjuster for the insurance company informed appellant by letter that the company had paid appellee $993 loss under the policy, and claimed subrogation to that extent; thus, with knowledge of these facts and that the insurance company was equitable owner pro tanto of the claim sued on, appellant took no action under either Rule 39 or Rule 93, but acquiesced in the prosecution of the suit by appellee for and on behalf of the company to the extent of the payment made. Under these circumstances, I am of opinion that the request of appellant came entirely too late.

It is obvious, in my opinion, that under the facts and circumstances, the insurance company, having paid appellee his loss to the extent of $993, held an equitable assignment pro tanto (Magnolia Pipe Line Co. v. Security Union Ins. Co., Tex.Civ.App., 37 S.W.2d 1062); and in such a situation it was permissible for appellee, in his own name, to prosecute the claim to judgment for and on behalf of the insurance company. A holding to that effect was made by the San Antonio Court of Civil Appeals in San Antonio A. P. Ry. Co. v. D. M. Picton & Co., 111 S.W.2d 842, writ refused by the Supreme Court.

■ In his "Fifth" point, appellant contends that the court erred in awarding to appellee $1,018.09 damages, because not authorized by the evidence.

P. J. Tolliver, the only witness who gave testimony as to the value of the car, after qualifying, testified that its reasonable market value in Dallas before it was injured was $1,850, and that after the injury it was worth only $575. After giving this testimony, the witness was questioned as to the ceiling price on the car at the time, as fixed by the OPA, and answered that he had data showing the ceiling price, but not with him at the time, and would have to guess. Asked to guess, answered: "Around $1,700—between $1,600 and $1,700." And later in his testimony, said: "I know approximately" what the ceiling price was. The above is the sum and substance of the testimony in regard to the value of the automobile in question.

Appellant, referring to the well known rule for measuring damages in such a situation as here presented, contends that there was no evidence indicating where the damage, that is, injury to the car, occurred. The undisputed evidence, in my opinion, leaves no doubt in regard to this matter. The car was deposited at the garage about 4:30 P.M. September 29, 1944; was in the garage at 7:45 P.M., but at 9:00 o'clock was missing and was not seen by appellee until 7:00 o'clock the next morning. It was in a garage in the City of Dallas, in a badly wrecked condition, where, evidently, it had been placed by City officials, as appellee was informed by a policeman that the car was found on the street the night before in its wrecked condition. There was no evidence to the contrary.

■ Appellant further contends that the OPA ceiling price should control or measure the damages and that such price was unknown to the witness who testified. In my opinion, the evidence as to the reasonable market value of the property before and after the injury, in the City of Dallas, was established by the evidence heretofore set out. I do not think the ceiling price

set by OPA had any bearing whatever on the case. The purpose of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., is set out at great length in the Act itself; however, its paramount aim, as construed by the courts, both State and Federal, was to protect the nation's economic structure against inflation by placing a ceiling limit on prices in sales of commodities or transactions reasonably within the scope and meaning of the term "sales," and was never intended to place a ceiling on recoveries under insurance policies, or for injury to, or destruction of property by wrongdoers.

In the case of General Exchange Ins. Corporation v. Tierney, 152 F.2d 224, 225, the Fifth Circuit Court of Appeals used the following pertinent language: "The War Powers Act, 50 U.S.C.A.Appendix, § 631 et seq., was for the purpose of curbing and preventing inflation. To accomplish such purpose it fixed a ceiling price on the class of cars here under consideration of $2,000.-00 for purchase or sale. It nowhere attempts to regulate or control adjustments for insurance loss. Moreover, it does not attempt to measure or fix value in setting up a price to be paid when such cars are bought and sold." The Supreme Court of Iowa made a similar holding in the case of Ross Produce Co. v. Thompson, Iowa, 20 N.W. 2d 37; the Criminal Court of Appeals of Oklahoma made a similar holding in the case of Fugate v. State, 158 P.2d 177, 157 A. L.R. 1299; and in the recent case of Betts Automotive Service v. Hitchcock, 197 S.W. 2d 878, the Amarillo Court of Civil Appeals gave a construction to the Act of Congress in accord with the decisions of the Federal and State courts heretofore cited.

For the reasons hereinbefore stated, I dissent from the decision of the majority, believing that appellant's points of error should have been overruled and that the judgment of the trial court should have been affirmed.

## On Rehearing.

YOUNG, Justice.

Upon reconsideration of this record I conclude that an issue of negligence has been raised by the testimony, resolved by the trial court in favor of plaintiff, in this: Defendant contended that his duty to exercise ordinary care as regards the bailed property terminated at closing time, 7:30 P.M., after which any car left on lot was at owner's risk. However, plaintiff did not know this, and within two hours the car was stolen. During such interval, under the circumstances, defendant owed plaintiff's property some measure of protection; and it became a question of fact determinable by court or jury of whether the safeguards extended by defendant during the entire period of bailment were commensurate with his continuing duty to exercise ordinary care. I therefore concur in the conclusions of Associate Justice LOONEY on all points discussed in his dissent on original submission, and join with him in an order affirming the judgment under review. Appellee's motion for rehearing is sustained.

BOND, C. J., dissents, adhering to the views expressed in original opinion.

BOND, Chief Justice (dissenting on rehearing).

The right of the bailee to make a contract exempting him from liability due to his negligence or the negligence of his servants has been in many of the States the source of apparent conflicting decisions. In many of the opinions where the question has been discussed, the direct question was not involved. In the case of Munger Automobile Co. v. American Lloyds of Dallas, Tex.Civ.App., 267 S.W 304, the Waco Court of Appeals had before it a case in which the Munger Automobile Company was a bailee for hire of an automobile left with it for repairs and was lost by theft. One of the issues discussed in that opinion was the exclusion of evidence showing the general method which the bailee had adopted and which was in operation in the handling of cars left with it for repairs, among which, by way of special defense, it had posted in a conspicuous place in its garage where said automobile was delivered, in large letters, the sign "Not Responsible for Cars or Parts in Case of Fire or Theft." The owner of

the automobile did not see nor was his attention called to such sign. The sign was only a precautionary measure of conducting the defendant's garage business. The court said: "The weight of authority seems to hold that, where there are no statutory provisions to the contrary, a contract made between the bailee and bailor, by which the bailee relieves himself from liability due to his or his employees' negligence, is valid, at least as against all but gross negligence. Page on Contracts, par. 766; World's Columbian Exposition v. Republic of France [7 Cir.], 96 F. 687, 38 C.C.A. 483; Wells v. Porter, 169 Mo. 252, 69 S.W. 282, 92 Am.St.Rep. 637; Terry v. Southern Ry. Co., 81 S.C. 279, 62 S.E. 249, 18 L.R.A.,N.S., 295; Coffield v. Harris, 2 Willson, Civ.Cas.Ct.App. § 315. * * * We can see no valid reason for denying parties who receive automobiles for repair the right to make a contract limiting their liability in case the cars should be stolen. Automobiles have become almost the universal mode of transportation, and necessarily in the handling of automobiles for repair there is more or less danger of loss by theft or fire, even when handled with ordinary care."

In the dissenting opinion of Justice LOONEY, concurred in later by Justice YOUNG, on appellee's motion for rehearing, is cited the case of Exporters' ᵵ Traders' Compress & Warehouse Co. v. Schulze, Tex.Com.App., 265 S.W. 133, as authority in this case. That opinion supports the contention here of appellant. Gus Schulze had delivered to the Compress Company 19 bales of cotton for storage. The Company delivered to him a receipt in which it agreed "to redeliver the cotton to the legal holder of the receipt, or pay market value therefor, acts of Providence or fire damage excepted." The cotton was destroyed by fire from unknown cause. Schulze brought suit on the expressed contract, made no allegations as to negligence on the part of the warehouse company. The Commission of Appeals, approved by the Supreme Court, said: "It is possible that there are sufficient facts in this case upon which it may be inferred that the warehouse company did not use ordinary care in the manner in which it kept its premises, but there is no evidence upon which to base a finding that the fire in question in this case was the proximate result of such cause." So, in the case at bar, appellant may have been guilty of negligence in omission, that is, in failing to have doors, shutters or barriers on his garage, or to have a watchman on duty to prevent theft, but there is no evidence by which the jury could infer that the theft of appellee's automobile was the result, or proximately resulted, from such acts of omission. There is no evidence of active negligence on the part of appellant, or his servants, that caused the theft. The theft of the automobile occurred at nighttime, long after the closing hours of his garage, when appellant and all of his employees had left the place of their employment. The building was not equipped with door, shutters or barriers, and no fact or circumstance is shown which would justify a finding that appellant should have had a watchman to keep vigilant watch over appellee's automobile, or cause door, shutters or barriers installed.

Then, again the majority cites the case of Rhodes v. Turner, Tex.Civ.App., 171 S.W.2d 208, 210, as being "very much akin" to the case at bar. It will be seen in the cited opinion that Turner and Rhodes were bailor and bailee respectively of an automobile owned by Turner. The suit is bottomed on active negligence of Rhodes and his employees, in that, "the defendant failed and neglected to keep proper watch over and care for the car and as a consequence of the negligence and carelessness of defendant, plaintiff's car was taken from the parking lot or driven away without the defendant's employee, to whom it had been delivered, knowing what became of it." The testimony in the cited case shows that the automobile was stolen during storage hours, in the day-time; that it was the duty of Rhodes' attendant " 'to take care of cars when they went in there, to park them and protect them so far as they could protect them at all times.' * * * 'to park cars, get out cars when the customers come, and to watch the lot.' " The evidence further shows that the attendant failed to watch the car, moved it to an unsecure place in the lot, left the key in the

ignition lock, and, when Mr. Turner came for his car, the attendant could not find it, and could give no information as to when and how or by whom the car was stolen. The jury found the defendant guilty of negligence in the *particulars alleged.* There was no allegation that defendant was guilty of negligence in the manner in which he maintained the open garage, hence the jury did not have to infer an ultimate fact of negligence proximately to cause the theft. That case has no remote "kin" to the instant case. If, in the case at bar, Ablon had an attendant on duty—a night watchman, or doors, shutters or barriers on the garage, and the automobile was stolen under facts and circumstances as to show a lack of ordinary care on the part of the bailee, then the jury could have reasonably found him guilty of actionable negligence. The doctrine of Res Ipsa Loquitur has no application to the suit here under review.

Ordinary bailment lies in contract, either expressed or implied, and it is usually held that the parties to such contracts are at liberty to fix the terms and mode of accomplishing the bailment, but such must not of course be against public policy or positive law. In the case at bar the evidence shows that the bailor did not see the signs nor did he read the limitation of the bailee's liability on the back of the stub that was handed him when he delivered the car. In fact he did not go into the garage to ascertain the mode and manner which the appellee had adopted and which was in operation; nor did he give the bailee or his servant a reasonable opportunity to inform him of the conditions and customs which defendant had adopted. He drove his automobile to the entrance of the garage and there delivered it to an employee of the bailee, accepted the ticket or stub which fixed the terms and responsibility of the bailment, put the stub or ticket in his pocket and went his way.

Manifestly, in pleadings and proof, plaintiff rests his case on specific negligence, acts of omission of the defendant in failing (1) to have a watchman on duty; (2) to have the garage or storage space enclosed by doors, shutters or barriers, as to prevent strangers from entering the premises and removing plaintiff's automobile. It is uncontroverted that plaintiff's automobile was stolen without the knowledge of the defendant or any of his servants, and that defendant was not guilty of active negligence which caused or proximately caused the automobile to be lost by theft. No presumptive negligence is indulged to establish defendant's liability. Hence the burden of showing negligence and that the negligence caused, or proximately caused, the loss of the automobile by theft, rested upon the plaintiff. The mere omission to have a watchman, or to have the doors, or shutters, or barriers to close the garage, or to have the entrance locked, do not, without more, establish actionable negligence. To establish these averments as constituting actionable negligence, the plaintiff must go further and prove that such conditions or a state of circumstances connected with the garage or with the doing of the acts, as would justify the inference that a man of ordinary prudence, acting under such conditions and circumstances, would not have done the acts in question. Under ordinary conditions it may well be regarded as an act of prudence to leave the garage space open for the convenience of defendant's customers, as the evidence here shows that customers did leave their cars there after closing hours with instructions to leave the key conveniently hidden about the car. There is no evidence in this record that any automobile has ever been stolen from this garage, or from any other garage in that vicinity, or that any such garage keeper has employed night watchmen to guard one or two cars that perhaps might be left in the garage over night, under unavoidable circumstances. I think it would be a policy of extraordinary duty for one to employ a night watchman or exercise overdue care for one customer during the night on uncertainty of his return. It may be safe in saying that ordinary care does not require that a watchman be kept constantly in and about every building during the hours of darkness for the purpose of protecting property against fire, thieves or other dangers. There is no room for reasonable minds to differ upon these questions.

It is axiomatic that evidence may be introduced to show all of the conditions

which surround or affect the acts of omission to have been negligently done or omitted, as well as all of the circumstances connected with the performance or omission of the acts in question. From a consideration of such conditions and circumstances, the jury must determine whether ordinary care required the acts to be performed or omitted, as the case may be, and thus decide whether or not the acts in question were negligently done or omitted as alleged. The evidence clearly shows that the relation of bailor and bailee existed and that the bailee failed to return to the bailor the automobile entrusted to his care. Thus such may have been sufficient to make out a prima facie case in favor of appellee, if it did not also appear without dispute that the automobile was stolen. In order to show that the acts or omissions complained of were negligently done or omitted, it was necessary for plaintiff to prove not only that such was done or omitted, but also to show the conditions and circumstances which would justify the jury in finding that such precautions were reasonably required in the exercise of ordinary prudence under the conditions and circumstances shown. Indeed, it is the province of the jury, as the trier of the facts, to determine whether or not ordinary care required a watchman be kept in and about the garage, or required doors, shutters or barriers to be on the building; but such are ultimate facts which must be found as a result of inference from conditions and circumstances, and unless the conditions and circumstances shown by the evidence are of such a character as that the ultimate facts may be rightfully and reasonably inferred therefrom, the finding of such ultimate facts is not sustained by evidence. A jury cannot be justified in finding that ordinary care required certain acts to be done, or that certain precautions should have been taken, unless such inference can be rightfully and reasonably drawn from the circumstances and conditions shown by the evidence.

The evidence here does not show that defendant operated the garage in question differently from any other garage in that vicinity, or that other garages took the precautions to have doors, shutters or barriers on their buildings to prevent theft; or that they kept a watchman on or about their premises as a precaution to prevent fires, theft or other dangers. I think it was incumbent upon the plaintiff to show some circumstance or condition upon which the jury could base an inference that such precautions were essential to the exercise of ordinary care. No such showing having been made, therefore there is no evidence to support the findings of the inferential fact that ordinary care required appellant to keep the garage locked or keep a watchman in and about the building. If such conditions and circumstances existed as to render it necessary in the exercise of reasonable care to have a night watchman, or locked garage, such should have been shown by the evidence. In 26 A.L.R. 260, the text relates: "The mere failure of a warehouseman to employ an inside night watchman or to maintain burglar alarms in the warehouse, neither of which was customary for warehouses in that vicinity, was held in Battelle v. Mercantile Warehouse Co., 1910, 139 App.Div. 649, 124 N.Y.S. 135, insufficient to justify an inference of negligence, so as to render the warehouseman liable for loss of property in the warehouse, which was stolen by burglars, where the warehouseman did employ a night watchman in common with other merchants and warehousemen in that vicinity." In 43 T.J. 956, sec. 40, the text writer lays down the rule applicable here: "A warehouseman who has stored goods in the customary manner and has exercised the usual care in protecting them is not responsible for their loss by theft. But if the theft is due to his negligence he is of course liable."

It clearly appearing from the record that the case was tried and decided on the theory that defendant was guilty of negligence of omission in failing to have doors, shutters, etc., on the garage, and in not having a night watchman about the premises, and, that too without any proof of any condition or circumstance showing such to have been actionable negligence, the cause should be reversed and, in the light of the evidence, if as a matter of law judgment should not be rendered, then the case should be remanded to the court below for new trial.