## FIRST NAT. BANK OF FORT WORTH v. BLEWETT et al.

### No. 13265.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 22, 1935.

Rehearing Denied Jan. 17, 1936.

Price & Christopher, of Fort Worth, for appellant.

McLean & Scott and Glover Johnson, all of Fort Worth, for appellees.

MARTIN, Justice.

The statement of the nature and result of this suit as contained in the brief of appellant, not being controverted, in any respect by appellees, is here adopted as a correct statement of the case by this court:

G. E. Blewett and H. G. Stinnett, Jr., alleging that they were copartners doing business in Fort Worth, Tex., under the name of Blewett-Stinnett Grain Company, filed this suit in the Ninety-sixth district court of Tarrant county, Tex., on the 23d day of June, 1934, against the First National Bank of Fort Worth, Tex., Inez S. Jordan, and the Central Surety & Insurance Company, seeking judgment against the defendant Jordan in the sum of $6,378.86, alleged to have been obtained by the defendant Jordan either on forged checks which were paid through the First National Bank of Fort Worth, Tex., or by embezzlement, and seeking judgment against the First National Bank of Fort Worth, Tex., in the sum of $5,978.86, and likewise seeking judgment against the Central Surety & Insurance Company in the sum of $4,353.86.

In order that the court may understand these various amounts, it should be pointed out here that $6,378.86 was the total sum sued for by plaintiffs, and that the sum of $5,978.86 is the total liability asserted by plaintiffs against the First National Bank; this sum being the total sum sued for less $400 which was not asserted against the First National Bank because the $400 represented two checks of $200 each admittedly indorsed by the plaintiffs but cashed by the defendant Jordan, who kept that sum of money, and is alleged to have embezzled the same. The First National Bank is not interested in the $400, and no judgment was rendered in the trial court against appellant, First National Bank, for such sum.

All of the forgeries and embezzlements took place between the 1st of May, 1933, and the 20th of November, 1933, and the amounts involved logically fall into two separate divisions of time, or from May 13th to and including August 5, 1933, during which time Inez S. Jordan, although in the employ of plaintiffs, was not covered by a fidelity bond, and during which time she is alleged to have forged checks amounting to $2,025. The second period of time is from August 7 to November 20, 1933, during which time the defendant, Inez S. Jordan, worked for the plaintiffs, appellees herein, under a fidelity bond issued by the Central Surety & Insurance Company, and during which time she is alleged to have forged or embezzled moneys to the extent of $4,353.86, in which sum is included the $400 mentioned hereinabove.

The plaintiffs therefore, while suing only for the total sum of $6,378.86, contended only for the joint liability as against Inez S. Jordan and Central Surety & Insurance Company as to the $400, claimed under joint liability against Jordan and the First National Bank for the defalcations from May 13th to and including August 5th, amounting to $2,025, and claimed the joint and several liability against the First National Bank, Central Surety & Insurance Company, and Inez S. Jordan for $3,953.86 covering the alleged forgeries for the second period of time from August 7 to November 20, 1933.

Plaintiffs alleged that they opened a bank account with the defendant First National Bank some time prior to 1932, and that each of the partners was authorized to sign checks for the purpose of withdrawing the funds from the account, and that the relation of bank and depositor continued to exist until about the 20th of November, 1933.

Inez S. Jordan was a bookkeeper, acting in the capacity of both cashier and bookkeeper for the plaintiffs, having begun her employment in 1932 and continued as such until on or about the 20th of November, 1933, and during that time Inez

S. Jordan, as the employee of the plaintiffs, had charge of the books, records, accounts, made all deposits for the partnership at the bank, generally handling the bank account, and monthly receiving from the bank a bank statement and the returned canceled checks.

The defendant Jordan, although acting in this confidential capacity, was under no bond to the plaintiffs until August 7, 1933, when the plaintiffs secured a bond with the Central Surety & Insurance Company, and on the same day authorized the First National Bank of Fort Worth, Tex., to honor her signature on the firm's checks, although, of course, not authorizing her to sign the partners' names to the checks.

The plaintiffs allege that the defendant Jordan had falsely and fraudulently represented to the defendant First National Bank that checks in the total sums hereinabove pointed out had been signed with the genuine signatures of one of the partners, that the defendant bank had paid such checks, and that the defendant Jordan had converted the same to her own use and benefit; and by supplemental petition plaintiffs alleged that the officers, agents, and employees of the defendant First National Bank were negligent in paying said checks, and that such negligence was the proximate cause of the loss.

Plaintiffs allege that demand was made upon the bank for the sums above mentioned on January 30, 1934, nowhere alleging, however, neither is it anywhere disputed, that they ever made any protest nor outcry against any sums being improperly charged to their bank account, and never at any time nor in any manner denounced any item charged against plaintiffs' bank account with defendant prior to January 30, 1934, or at least prior to November 20, 1933.

The defendant First National Bank, appellant herein, joined issue with the plaintiffs on the grounds, and specially pleaded, that on or before the 1st day of each and every month during the period from the fall of 1932 until November 20, 1933, the defendant bank had delivered to the plaintiffs, or their authorized agent, Inez S. Jordan, at their request and upon the said Jordan's calling at the bank for such statements, an itemized statement of plaintiffs' account with the First National Bank showing all charges made against the account and all credits to the account, and all paid checks on each and every month,

that, although the forgeries are alleged by the plaintiffs to have commenced on May 13, 1933, and to have continued through each and every month up to and including November 20, 1933, a period of almost seven months, the plaintiffs never at any time made any complaint nor protest as to the items charged against their account, and never at any time denounced any item charged against the account as a forgery when it was the duty of plaintiffs, if there were such forgeries, to have so denounced same, and defendant First National Bank defended therefore upon the theory of negligence of the plaintiffs such as to bar the plaintiffs' right of recovery, or, in any event, such contributory negligence, which was the direct and proximate cause of the loss, as to bar the plaintiffs' right of recovery upon the theory of accounts stated, and upon the theory of equitable estoppel; the facts with reference to all of such theories having been fully and specifically pleaded by the defendant First National Bank in its first amended original answer.

The defendant First National Bank specifically alleged that, although the monthly statements and canceled checks were returned on each and every month, the plaintiffs negligently and carelessly failed to examine said statements and canceled checks, when even a casual examination thereof would have disclosed the forgeries and that such negligence and carelessness of the plaintiffs was the direct and proximate cause of the defendant bank making payment of any and all of the alleged forgeries; that, if at any time within a reasonable time after the 1st day of June, 1933, the forgeries having commenced during the month of May, 1933, the plaintiffs had even casually inspected or examined their accounts, they would have discovered such forgeries, and could have and should have denounced such forgeries, and, having done so, the bank could have protected itself both as against the alleged forger as to past transactions and in all events as to future forgeries, and that the direct proximate cause of the loss was the negligence of the plaintiffs in failing to make such examination.

Defendant First National Bank, appellant herein, likewise specifically alleged that the defendant Jordan was a trusted employee of the plaintiffs whom plaintiffs had put in charge of their books, papers, documents, all incoming and outgoing checks and vouchers, and had been put forward as the representative of plaintiffs

in handling their bank account and all affairs with the bank, making plaintiffs' deposits, had even been authorized to sign plaintiffs' checks, and at all times received plaintiffs' bank statements and returned canceled vouchers; that plaintiffs, having made no outcry nor denounced any item as a forgery during all the months from May until November, although plaintiffs had received their statements and canceled checks monthly, defendant bank, appellant herein, assumed, as it had a right to do, that its account, as reported on the 1st of each month, was in all things correct (an account stated), and that the plaintiffs, on account of their negligence in not examining said bank's statements and returned canceled vouchers, and in failing to promptly and within a reasonable time to notify defendant bank, appellant herein, of the forgeries, and in accepting by their acquiescence all such statements, are estopped in equity from asserting that any of the checks were forged or improperly paid; that all of said wrongful, careless, and negligent acts of the plaintiffs themselves was the direct and proximate cause of all losses.

With the issues thus joined, this cause was tried to the court without the intervention of a jury, beginning on the 6th day of December, 1934, and judgment was thereafter rendered for the plaintiffs in all respects as prayed for on December 11, 1934, but motion for a new trial was thereafter filed by the defendant First National Bank, as well as by the plaintiffs, each of which motions for new trial were by the court overruled on January 8, 1935.

The defendant First National Bank duly gave notice of appeal, and on January 23, 1935, within the time prescribed by law, filed its supersedeas bond which was approved by the district clerk.

This cause is now regularly before this court on appeal for review of the errors complained of in the court below.

Appellant predicates several assignments of error upon the form in which the trial court expressed his findings of fact and conclusions of law. In some instances findings of fact are expressed as conclusions of law and the instrument is subject to some of the criticisms leveled at it. But we understand the rule to be that it is to be considered as a whole, and, although the court incorrectly called a finding of fact a legal conclusion, we are not confined to such headings, but may look to the entire instrument to see if it

supports the judgment rendered. Doing this, we are led to overrule assignments Nos. 1 to 10, inclusive, which are all based upon this document, either directly or indirectly. Clay v. Richardson (Tex.Civ. App.) 290 S.W. 235; Wells v. Yarbrough, 84 Tex. 660, 19 S.W. 865; Leonard v. Torrance (Tex.Civ.App.) 210 S.W. 295. Under these 'authorities the errors indicated are not reversible errors.

The other assignments are all grouped by us for convenience of discussion, as they all go to the merits of the controversy and may be embraced under the one question of whether the negligence of the plaintiffs below contributed to the loss of their money through the forgeries perpetrated by their servant and trusted employee, Miss Inez Jordan.

If the loss was occasioned alone by the negligence of the defendant bank and its officers, then the judgment of the trial court should stand as rendered; but if, on the other hand, there was negligence on the part of plaintiffs which contributed to the loss of the money, then said judgment was incorrect and should be here remedied. The undisputed facts are that for a period of more than seven months Miss Jordan drew money from the bank on forged checks, and during this entire period such paid checks were returned by the bank in monthly statements of account for the examination of the depositors, with the printed formal request that the customer examine each report or statement and make complaint if any errors were found. The trial court finds as a fact "that the forgeries on the part of the defendant Jordan, were so palpable, plain and apparent on their face that the defendant bank could have by the exercise of ordinary care detected such forgeries in advance of its payment of any of them." Whereupon he finds that "the aforesaid negligence,on the part of the defendant bank was the direct and proximate cause of the successful consummation of such forgeries on the part of the defendant Jordan."

The trial court further found that the "plaintiffs" (appellees here) "exercised ordinary care in the supervision and examination of their bank account with the defendant bank."

While each of these findings is classified in the document under the heading of "Conclusions of Law," we are not authorized under the decisions above cited and many others to ignore them for that reason. They are, of course, findings of

fact, and as such must be given the same force and effect as if they were found by a jury. In other words, if there is any evidence in the record to support them, then they are binding upon this court. 3 Tex.Jur. p. 1102, and authorities there cited.

It is in evidence that Inez Jordan did not submit the forged checks to her employers, but withdrew and secreted them, also that she deftly altered the statements of account so as to conceal her forgeries and prepared reconciliations for their examination each month which showed a proper balance between the bank's statements and the firm's books, and the trial court held that their examination of such statements and reconciliations was the exercise of "ordinary care" under the circumstances, and, under well-established rules governing the action of this court, we are not permitted to render a different finding, even though some of us might have reached a different conclusion upon the evidence.

That the findings of the trial court must be sustained unless there is no evidence to support them is held in the case of Chapman v. First National Bank (Tex.Civ.App.) 275 S.W. 498, and many other authorities.

While the evidence rather strongly tends, in the opinion of the writer, to support the defenses interposed by the appellant bank, we feel impelled by the force of the findings of the trial court and the law as we understand it to affirm the judgment, and it is accordingly so ordered.