**McASHAN et al. v. CAVITT et al.**

No. 4678.

Court of Civil Appeals of Texas. El Paso.

Dec. 14, 1949.

Rehearing Denied Jan. 4, 1950.
Judgment Affirmed May 17, 1950.

Warren & Groce, Corpus Christi, Randle Taylor, San Antonio, for appellants.

William E. Remy, San Antonio, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Bexar County, 57th Judicial District. American Fire & Casualty Company as subrogees of Mr. and Mrs. S. E. Cavitt as plaintiffs recovered judgment in favor of said insurance company in

the sum of $1676.00 and Mr. and Mrs. Cavitt in the sum of $74.00 against several defendants, to-wit, Ernest McAshan and others doing business under the firm name of the Shoppers' Parking Lot. The trial was to the court without a jury, and on the motion of defendants the court made and filed Findings of Fact and Conclusions of Law.

It was alleged by plaintiffs in substance that on or about the 29th day of November, 1947, defendants owned and operated a parking lot located at 211 Blum Street, San Antonio, Texas; that said defendants operated the parking lot for hire, charging a fee for parking, storage and safe-keeping of automobiles brought to them by the general public; that on or about the said date plaintiff Mrs. Cavitt delivered to defendants at said place of business a certain 1947 Ford sedan for the purpose of storage, parking and safe-keeping; she obligated her husband to pay to the defendants and did pay to defendants the usual and customary charges and fees charged and demanded by the defendants for the parking and safe-keeping of automobiles. They allege the failure of defendants to redeliver to her the automobile so entrusted to them on her demand. It is further averred that defendants were guilty of negligence in numerous particulars in the care and custody of plaintiff's car; that the agents and servants and employees of defendant negligently failed to keep a proper lookout for the safety of said automobiles; that defendants negligently placed plaintiffs' automobile on an open parking lot that was adjacent to the public streets and sidewalks of the City of San Antonio, with key to such automobile left in the ignition lock of said automobile. Each of these acts or omissions was charged as negligence, and to be the proximate cause of the loss of said automobile. Defendants replied by a general denial.

The court found, in substance, that on or about the 29th day of November, 1947, Mr. and Mrs. Cavitt were the owners of a Ford four-door sedan, that on or about said date Mrs. Cavitt parked their car in defendants' parking lot; that she parked same about 10:30 or 11 A.M. for storage and safe-keeping, and went about her business; that she did not intend to stay in town as long as she did and would probably return to the lot before 6:30 o'clock; that she either paid the parking fee of 25¢ at the time the car was delivered to the parking lot or agreed to pay the same when she returned for the car; she was given an identification claim check which recited that the parking lot would close at 6 P.M.; that cars left later were at owner's risk, that they would not be responsible for loss by fire, misdelivery or theft except such last be occasioned by negligence of the operator, and then only up to the value of $100.00. Mrs. Cavitt did not read this claim check when it was given to her; her failure to read same was a failure to exercise ordinary care; she read same after she returned to the parking lot and discovered her car was not there; she returned about 7 P.M. and no one was at the parking lot and her car was not there. Her car has never been located, and defendants have not returned same to her. The reasonable market value in San Antonio of the car was $1750.00. She left her ignition key in the car at the time she delivered it to the parking lot, the rules and regulations of which required the patrons to leave their keys within the ignition and if they did not to pay 50¢ extra; the parking lot has a sign on it reading "All Day Parking" which sign was seen by Mrs. Cavitt, also another sign on the office "Not responsible for merchandise left over 48 hours". There was another sign reading "Open at 8 A.M., closed at 6 P.M.". Mrs. Cavitt did not see this sign at the time she left her car at the parking lot, and had not seen it at any time before then and did not see it until after she called for the car in question. She had never parked at this parking lot before and did not know that it purported to close at 6 P.M., no one connected with the lot told her. It is an open parking lot with no railings or fence around it; that defendants did not have a night watchman at the parking lot and no one was at the lot after 6 P.M. to watch the car; an employee of defendant left the car in question close to the office of the parking lot a few feet from Blum Street on the well lighted portion of

the lot, the keys to the car were left on the sunshield or visor of the car or on the seat. Defendant had no provision, rules or regulations for locking the cars that were left on the parking lot after six P. M. Defendant had no system whatsoever for protecting cars from theft that were in the possession of defendants after six P.M. The entire personnel of defendants left the parking lot by 6:30 P.M. on November 29; the defendants failed to exercise reasonable and ordinary care for the protection of the car in question from theft after 6:30 P.M., in fact failed to exercise any degree of care for the protection of the car after 6 P.M. Same was stolen or taken from the parking lot by someone other than the defendants, and that such theft was the result of negligence on the part of defendants in not adequately protecting same from theft; that a contract of bailment for hire existed between Mrs. Cavitt and defendants; that defendants were under obligation to redeliver the car to plaintiff Mrs. Cavitt when she called for same, but they failed and refused to do this; that defendants were negligent in failing to provide adequate protection for such car against theft or loss, and that plaintiff's damage was proximately caused by defendants' failure to exercise reasonable and ordinary care for the protection of such car. The stub or claim check received by Mrs. Cavitt did not constitute a contract limiting the liability on the part of defendants; the duty of defendants to exercise ordinary care in regard to the car did not terminate at 6:30 P.M. and that they failed to exercise any measure of protection or care of the car after 6:30 P.M. and as a result plaintiff sustained damage in the amount for which the judgment provided.

Defendants urge five grounds for the reversal of the judgment rendered. It is urged that the court erred in holding appellants owed the duty to appellees to protect the car from theft after 6 P.M., and further that at six o'clock P.M. the contract of bailment creating the duty expired, and defendants owed no duty of exercising care; that the court erred in concluding that appellants were liable to appellee for the theft of the automobile in the

absence of finding that failure to exercise ordinary care by appellants was the proximate cause of the theft of the automobile. The court erred in rendering judgment for plaintiffs after finding that appellee Mrs. Cavitt was negligent in not reading the parking ticket which informed her that the parking lot closed at 6 P.M. It is further urged that in any event the court should have limited the amount of recovery to $100.00.

The respective parties to this appeal seem to each concede that there was a contract constituting defendants the bailee of the car in question. On behalf of defendants it is contended that under the contract of bailment their duty ceased at 6 P.M., further that under the contract of bailment their liability was only for negligence and was limited to a maximum value of $100.00.

 The relationship of bailor and bailee arises by virtue of a contract. It ordinarily arises by an offer on one side and an acceptance thereof on the other. However, the contract may be implied from the acts of the parties. Here the defendants unquestionably held themselves out as the operators of a parking lot and when Mrs. Cavitt left her car with them for the purpose of having same stored and cared for, they accepted same and a contract of bailment thus arose.

The basis of the contention that the time limit of bailment was 6 P.M. is founded on the writing, or printing, on the receipt given by the parking lot for the car. The court found that Mrs. Cavitt did not read same. It is stated in 6 Am.Jur. p. 275, par. 179: "Although there is authority apparently to the contrary, the trend of the more recent authorities is to the view that receipt from the bailee at the time of the bailment of what is ostensibly a token for later identification of the bailed property, such as a check for a parcel left at a parcel stand, or a number identification slip for an automobile left at a garage or parking station, does not bind the bailor as to provisions, purportedly limiting the bailee's liability, which are printed thereon, where his attention is not called to them and he has no actual knowledge at the time of the bailment that they are supposed to become

part of the contract. The mere retention of such a check without such knowledge does not bind him to the limitation. The mere fact that the bailor knows that there is writing on the token is immaterial, as he is not bound to read it unless he has reason to believe it contains terms, and the same is true even though in previous bailments between the same parties he has received similar tokens but has not read them or known that they contained terms."

■ The chief constituting element of a contract is the expression of assent by each party thereto the one to the other to the matters comprehended in the agreement. Words or conduct, viewed in the light of circumstances, may reasonably be considered an expression of assent to such terms. Mental reservations or matters of which a party has no notice, may not fairly be said to have been assented to. If not assented to, or if there is not an expression of assent, same are not terms of the contract. Defendants may have intended that the matters expressed on the receipt given Mrs. Cavitt for her automobile be part of the contract, but in the absence of her knowledge thereof or the calling of her attention thereto by the employees of defendant they did not become parts and terms of the contract, did not convey to her notice that defendants intended to close the parking lot at 6 o'clock, that after 6 o'clock it was their intention to leave the key accessible so that anyone could carry away and steal said automobile. The evidence was sufficient to justify the finding that the contract was the ordinary contract of bailment, without attempted limitation of liability.

■ This, however, is not important in this case for the reason that the printed matter on the receipt did not attempt to limit liability as to their negligence; with the exception for negligence liability was limited to $100.00. The notice thereon that the parking lot closed at 6 o'clock was of considerable materiality. We think what Justice Young said in his concurring opinion in Ablon v. Hawker, Tex.Civ.App., 200 S.W.2d 265, loc. cit. 272, has important bearing here. "Defendant contended that his duty to exercise ordinary care as regards the bailed property terminated at closing time, 7:30 P.M., after which any car left on the lot was at the owner's risk. However, plaintiff did not know this, and within two hours the car was stolen. During such interval, under the circumstances, defendant owed plaintiff's property some measure of protection, and it became a question of fact determinable by court or jury of whether the safeguards extended by defendant during the entire period of bailment were commensurate with his continuing duty to exercise ordinary care."

In this case the evidence is susceptible of the construction that defendants ceased all care with reference to the car in question, left same without any notice to Mrs. Cavitt that they intended to do same, left same so that it would be easy for a thief to drive same away. It is conceivable that Mrs. Cavitt had a duplicate set of keys and could have used her car. This automobile was relatively a valuable piece of property. Defendant's employees, in callous disregard of any rights of their customers, exposed same to theft, exposed it by leaving the key readily accessible. We think the finding of negligence on their part is amply sustained by the evidence. Langford v. Nevin, 117 Tex. 130, 298 S.W. 536; see Davis v. Hasdorff, Tex.Civ.App., 207 S.W.2d 424. In this case the finding absolved the defendant from negligence. From the facts proved the trial court drew the inference that there was no negligence in the case. The facts at least warranted, although did not compel, that such inference be drawn. See Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1. In the instant case the facts warrant, if they do not compel, a finding of negligence on the part of defendant.

■ In regard to the contention that defendants limited their liability for the loss of the car to $100.00, this even though they were negligent, the evidence warrants the finding that Mrs. Cavitt did not know of this attempt and same had in no way been communicated to her.

Defendants rely to an extent on the case of Exporters & Traders Compress & Warehouse Co. v. Schulze Tex.Com.App., 265 S.W. 133. That case simply holds that

where cotton is destroyed in the custody of a warehouseman by fire, the burden of proof to show negligence was upon the plaintiff, further to show that such negligence was the proximate cause of the damage. Here the evidence is deemed ample in these two respects. Plaintiff's car was practically left on the street with an ignition key readily accessible to anyone who desired to steal same.

No error appearing, it is ordered that the judgment of the trial court be in all things affirmed.