ERNEST MCASHAN ET AL V. S. E. CAVITT ET AL.

No. A-2552. Decided May 17, 1950.
(229 S. W., 2d Series, 1016.)

148

*Randle Taylor,* of San Antonio, *Warren & Groce* and *Walter Groce,* all of Corpus Christi, for petitioners.

The Court of Civil Appeals erred in holding that petitioners owed to respondents the duty to exercise ordinary care to protect the automobile of the Cavitts and the insurer against loss by theft after 6 p.m. under the facts of this case. Ablon v. Hawker, 200 S. W. 2d 265; Munger Automobile Co. v. American Lloyds of Dallas, 267 S. W. 304; Rhodes v. Turner, 171 S. W. 2d 208.

*William E. Remy,* of San Antonio, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

Following trial without jury, judgment was rendered by the district court in favor of respondents S. E. Cavitt and wife and their insurer against petitioners for $1750.00, being the value of an automobile belonging to Mr. and Mrs. Cavitt, which was delivered by Mrs. Cavitt to respondents for parking in a parking lot operated by them in the City of San Antonio and was stolen from the lot after 6 o'clock P. M. The Court of Civil Appeals affirmed the trial court's judgment. 227 S. W. 2d 340.

These are the facts found by the trial court and shown by

undisputed testimony: The parking lot is in the business district of the City of San Antonio. In part it is a small unfenced area abutting two streets. A small office is situated in that area. Patrons drive their automobiles into the area and receive claim checks for them. The automobiles are then driven by an employee of petitioners out of the small area and into a larger adjoining fenced lot. Mrs. Cavitt, who lived in another town, drove her automobile into the small area at about 10:30 o'clock A. M. and delivered it to those in charge of the parking lot for parking and safekeeping, leaving the ignition key in the automobile and either paying at that time the parking fee of twenty-five cents or agreeing to pay it on delivery of the car to her. When she left the car she was given a claim check on which was printed: "We close at 6 P. M. Cars left later at owner's risk." She put the check into her purse without reading it. The trial court found that her failure to read the check was a failure to exercise ordinary care. On the office of the parking lot is a sign which Mrs. Cavitt saw: "Not responsible for merchandise left over 48 hours", and another sign which she did not see: " A service charge of 50c will be collected from all persons locking their ignition or taking their keys with them." Across the entrance to the small area and about fifteen feet above the ground is a sign in letters approximately ten inches high: "Open at 8 A. M. Close at 6 P. M." Mrs. Cavitt did not see that sign and it was not called to her attention. She did not know that the parking lot closed at 6 P. M. and no one told her that it did and she was not told that for an additional charge she could take the keys of her automobile with her. When she returned to the parking lot at 7 o'clock P. M. her automobile was not there and no watchman or other employee of petitioners was present. A witness who was in charge of the lot for petitioners testified that respondents' car was moved at 6 P. M. by one of petitioners' employees from the large enclosed lot to the small unfenced area or front lot, and was left near the office, in which there was a light, and near the sidewalk. The keys were left in the automobile. All of petitioners' employees left the parking lot at 6:30 P. M. Petitioners had no provision, rules or regulations for locking or otherwise protecting automobiles that might be left on the parking lot after 6 o'clock P. M., and no system whereby the keys of cars so left were taken to a central location so that owners of cars could call for them.

The trial court found that petitioners failed to exercise reasonable and ordinary care, or any degree of care, for the protection of respondents' car after 6:30 P. M., and that the car was solen or taken from the parking lot by someone other than

the petitioners or the respondents, and that "such theft was the result of negligence on the part of petitioners in not adequately protecting the same from theft."

Petitioners' principal defense to the suit as presented by their application for writ of error is that they offered parking service to the public from 8 o'clock A. M. to 6 o'clock P. M. and not after 6 o'clock P. M., and that having thus limited their offer they are not liable for the loss of the automobile. The limitations of their offer upon which they rely are evidenced by the sign over the entrance to the parking lot stating that the lot closed at 6 P. M. and by the printed statement on the claim check which has been quoted above.

■ When Mrs. Cavitt left the automobile in petitioners' parking lot for parking and safekeeping and paid or agreed to pay to petitioners the parking fee of twenty-five cents and petitioners took possession of the automobile and gave Mrs. Cavitt a claim check, the relation of bailor and bailee for hire was created, and the obligation was imposed upon the bailee to exercise ordinary care to protect the automobile from theft. Exporters' & Traders' Compress & Warehouse Co. v. Schulze, (Com. App.) 265 S. W. 133; Rhodes v. Turner, 171 S. W. 2d 208; Rhodes v. McDonald, 141 Texas 478, 172 S. W. 2d 972; Ablon v. Hawker, 200 S. W. 2d 265; Direct Navigation Co. v. Davidson, 32 Texas Civ. App. 492, 74 S. W. 790; Sandler v. Commonwealth Station Co., 307 Mass. 470, 30 N. E. 2d 389, 131 A. L. R. 1170; Blashfield's Cyclopedia of Automobile Law and Practice, (Perm. Ed.) Vol. 7, pp. 534-535, Sec. 5022; Williston on Contracts, (Rev. Ed.) Vol. 4, pp. 2921-2922, Sec. 1045, pp. 2960-2962, Sec. 1065a.

The case before us comes to this: Did the obligation of petitioners to exercise ordinary care for the protection of Mrs. Cavitt's automobile terminate at 6 o'clock P. M. of the day on which the automobile was delivered to them? The position taken by petitioners is that the foundation of bailment lies in contract, that the parties may substitute a special contract for one implied in law, and that in this case a special contract was made by petitioners' offer of parking service to the public from 8 o'clock A. M. to 6 o'clock P. M. and not after 6 o'clock P. M., and by Mrs. Cavitt's acceptance of their offer when she left her automobile with them. To sustain this position petitioners depend upon the sign showing the closing hour and the statement printed on the claim check as being a part or parts of the contract between them and Mrs. Cavitt.

■ It may well be doubted that the sign of itself, even if it had been seen by Mrs. Cavitt, would have relieved petitioners of the obligation to exercise ordinary care for the protection of Mrs. Cavitt's automobile after 6 o'clock P. M. It gave notice merely that we "Close at 6 P. M." It did not clearly give notice that the automobile if left later would be at the owner's risk. It might be construed to mean that no automobile would be accepted after 6 o'clock P. M. Such a sign will be strictly construed, and will not be interpreted as effecting an exemption from the exercise of ordinary care with respect to the safety of the property if any other meaning may reasonably be ascribed to the language employed. Langford v. Nevin, 117 Texas 130, 133, 298 S. W. 536.

■ But the sign was not seen by Mrs. Cavitt and it was not called to her attention. She did not read the identification check, and her attention was not directed to what was printed on it. The general rule, and especially that of the more recent decisions, is that limitations of the bailee's responsibility expressed on signs or printed on claim checks do not become parts of the contracts of bailment and do not bind the bailor unless they are called to his attention. Ablon v. Hawker, 200 S. W. 2d 265; Union News Company v. Vinson, 227 S. W. 236; Sandler v. Commonwealth Station Co., 307 Mass. 470, 30 N. E. 2d 389, 131 A. L. R. 1170 and Note pp. 1175, 1184-1202, 1205; Kravitz v. Parking Service Co., 240 Ala. 467 ,199 So. 731; Agricultural Insurance Co. v. Constantine, 144 Ohio St. 275, 58 N. E. 2d 658; Malone v. Santora, 135 Conn. 286, 64 Atl. 2d 51; 8 C. J. S. p. 266, Sec. 26; 6 Am. Jur. pp. 275-276, Sec. 179; Note 175 A. L. R. pp. 8, 123-128; 7 Blashfield's Cyclopedia of Automobile Law and Practice, (Perm. Ed.) pp. 560-562, Sec. 5040; 27 Georgetown Law Journal, pp. 162, 179.

Probably most of the decisions which apply the foregoing rule are in cases where attempt is made to avoid or limit responsibility for loss by fire or theft, but there are a number of them in which the sign or statement on the claim check has reference to closing time.

A Texas case, Ablon v. Hawker, 200 S. W. 2d 265, is very closely in point. There, in a garage with no means of closing it, where automobiles were accepted for storage, a sign was hung in plain view of the entrance: "Garage closes at 7:30 P. M. Cars left after this at owner's risk." The plaintiff, at 4 or 4:30 P. M., drove his automobile to the entrance for storage and delivered it to an attendant, accepting and putting in his pocket without reading it a claim check, on which was printed: "Safe

inside parking. * * * Not responsible for damage by fire, theft, storm or accident, or articles left in car." He did not observe the sign and neither asked for nor received any information as to the conditions of the bailment. The key was left in the automoblie and no watchman or other employee was present in the garage after 7:45 P. M. There were no barriers or obstructions to prevent a stranger from entering the garage and removing the automobile. The automobile was stolen at about 9 o'clock P. M. The court, in opinions by two of the justices, with Chief Justice Bond dissenting, affirmed the trial court's judgment for the plaintiff, the owner of the automobile. It was held that the burden which rested upon the plaintiff to prove that the theft of the automobile was the result of the defendant's failure to exercise reasonable and ordinary care for its protection against theft was fully discharged by the facts in evidence and that neither the sign nor what was printed on the claim check relieved the defendant of his obligation to exercise reasonable care for the protection of the automobile and that his obligation did not terminate at 7:30 P. M., the closing time, because the plaintiff did not know that the garage closed at 7:30 P. M., not having seen the sign and not having read the claim check. The concurring opinion by Associate Justice Young, after referring to the words on the sign that the garage closed at 7:30 P. M., and that cars left thereafter would be at the owner's risk, contains the following:

"However, plaintiff did not know this, and within two hours the car was stolen. During such interval, under the circumstances, defendant owed plaintiff's property some measure of protection; and it became a question of fact determinable by court or jury of whether the safeguards extended by defendant during the entire period of bailment were commensurate with his continuing duty to exerecise ordinary care." 200 S. W. 2d 265, 272.

■ The application for writ of error in Ablon v. Hawker was refused with the notation "no reversible error". It presented as the principal points of error first the contention that there was no evidence of negligence on the part of the defendant proximately causing the loss, and second the contention that by reason of the sign the contract of bailment terminated as a matter of law at the closing time, 7:30 P. M., and that the defendant having discharged all of his duties as bailee up to that time, was not liable for the loss. The writ of error would have been granted had the Court been of the opinion that either one of these points was well taken, and the refusal of the application for the writ with the notation quoted amounted to the ap-

proval of the decision of the Court of Civil Appeals of the two questions raised by these points.

In Sadler v. Commonwealth Station Co., 307 Mass. 470, 30 N. E. 2d 389, 131 A. L. R. 1170, the owner of an automobile delivered it to an attendant in a parking lot and received a claim check or "stub" on which was printed: "We are not responsible for the car * * while parked on our lot. * *. No attendant on duty after 6 P. M." He did not read what was printed on the "stub". When he returned between 6 and 6:15 P. M. there was no attendant present, and he found that the automobile had been stolen. The court, in affirming the trial court's judgment for the plaintiff, the owner of the automobile, held that the limitation of liability appearing on the stub given to the plaintiff, which was not read by him, did not as a matter of law require the direction of a verdict for the operator of the parking lot, and expressed the opinion that a finding was warranted that a person in the position of the plaintiff might properly assume, from the requirement of a fee and the deleivery of possession and control of the automobile to the owner of a public parking station, that the owner assumed responsibility for its care, and further that the plaintiff could reasonably assume that the stub was a receipt for his automobile, or a means of identifying him when he should return to get his automobile, rather than a contract freeing an apparent bailee from responsibility. See also General Exchange Insurance Corp. v. Service Parking Grounds, 254 Mich. 1, 235 N. W. 898, 899; Kravitz v. Parking Service Co., 240 Ala. 467, 199 So. 731; Starita v. Campbell, 72 R. I. 405, 52 Atl. 2d 303; Lewis v. Ebersole, 244 Ala. 200, 12 So. 2d 543; Malone v. Santora, 135 Conn. 286, 64 Atl. 2d 51.

■ Since Mrs. Cavitt did not know of the limitations expressed on the sign and on the claim check, and she was not informed that the parking lot would close at 6 P. M. and that the bailee would not be responsible for the automobile if left after that time, and in view of the authorities that have been discussed and cited above, it is our opinion that the contract of bailment did not include those limitations and that the obligation of pétitioners to use ordinary care for the protection of the automobile did not terminate at 6 o'clock P. M.

It is true that the operator of a parking lot should be free to establish hours for opening and closing and that there should be a method by which he could be relieved of responsibility for automobiles after the closing hour. We do not undertake to suggest what the method should be except that information as

to the hour of closing and the time of the ending of responsibility for care of the automobile should be clearly and specifically brought to the attention of the bailor.

One of petitioners' points of error is that the trial court did not find as a fact that petitioners' negligence proximately caused the theft of the automobile. The trial court, on request and after the rendition of judgment, filed elaborate findings of fact and conclusions of law. One of the findings of fact is that the theft of the automobile was the result of negligence on the part of petitioners in not adequately protecting it from theft. Among six paragraphs under the title "Conclusions of Law" which immediately follow the "Findings of Fact" is this paragraph: "The defendants were negligent in failing to provide adequate protection of such car against theft or loss and that the plaintiffs' damage was proximately caused by the failure to exercise reasonable and ordinary care for the protection of such car."

■ The substance of petitioners' argument under this point is that the evidence does not support a conclusion of law that the negligence was a proximate cause, but raises the question only as an issue of fact, and that because there is no finding of proximate cause as a fact among the fact findings, the trial court's judgment is erroneous. The record affirmatively shows a conclusion by the court that the negligence proximately caused the loss, and the court seems to have made the mistake of writing that conclusion under the title "Conclusions of Law". The designation is not controlling, and looking to all of the findings and conclusions we may consider this conclusion a finding of fact. Wells v. Yarbrough, 84 Texas 660, 663, 19 S. W. 865; First National Bank of Fort Worth v. Blewett, 89 S. W. 2d 487, 490. But even if the conclusion is regarded as one of law, it seems that a trial court's conclusion that the evidence establishes proximate cause as a matter of law would necessarily include a finding of proximate cause as a fact supported by the evidenece. Be that as it may, we believe that the conclusion, together with the finding of fact that the theft was the result of petitioners' negligence, and the fact that in the absence of express findings of fact an inference of a finding of proximate cause would be indulged in support of the judgment,—these taken together are enough to support the judgment in so far as causal relation between the negligence and the theft are concerned.

The judgments of the Court of Civil Appeals and the district court are affirmed.

Opinion delivered May 17, 1950.

No motion for rehearing filed.