**ALLRIGHT, INC., Appellant,**

v.

**Carl SCHROEDER, Appellee.**

**No. 16846.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 31, 1977.

Rehearing Denied April 28, 1977.

George M. Bishop, Houston, for appellant.

Martin & Sperry; Malcolm Williams, Houston, for appellee.

COLEMAN, Chief Justice.

Plaintiff brought suit alleging that as a result of defendant's negligence, his automobile was stolen from a parking lot operated by defendant. Defendant appeals from an adverse judgment. We affirm.

On September 8, 1969, at approximately 1:30 p. m. plaintiff drove his automobile into defendant's parking lot in downtown Houston. He turned possession of the automobile over to one of the defendant's employees, who proceeded to park the automobile, and received a claim ticket from another employee. The words "We close at 6 o'clock p. m." were printed on the ticket in heavy type. A copy of the ticket is attached as an appendix. It can be seen that the provision limiting liability would not be so readily noticed.

Signs were located throughout the parking lot which stated that the lot closed at 6 o'clock p. m. and that anyone returning after that time could pick up their keys at another parking lot operated by defendant at a specified location. Plaintiff had parked his automobile at this lot previously. He was aware at the time he left the car at the station on the occasion in question that the signs and the claim ticket said the lot closed at 6 o'clock.

When the plaintiff returned to the lot around midnight his car was missing. He inquired at defendant's parking lot at 503 Fannin as to the whereabouts of his car. The attendant did not have his keys and knew nothing about the car. Plaintiff filed an offense report with the Houston police reporting the theft of his automobile, and the car was recovered on September 10 by the Harris County Sheriff's Department. It had been partially "stripped" and suffered other damage.

The case was tried to a jury. In answer to the special issues submitted the jury found (1) the defendant's negligence proximately caused plaintiff's automobile to be stolen; (2) there was a risk of theft to plaintiff's automobile after the lot closed for the day but this was not open and obvious to plaintiff; (3) the difference in market value of the car before and after the occurrence was $1,000.00. Judgment was rendered for the plaintiff in the amount of $1,000.00.

The defendant appeals complaining of the action of the trial court in refusing to submit the following requested issues:

"1. Do you find from a preponderance of the evidence that the parking lot in question closed at or about 6 o'clock p. m. on September 8, 1969?

"2. Do you find from a preponderance of the evidence that the plaintiff's automobile was stolen by an unknown third party or parties after the lot had closed for the day on September 8, 1969?

"3. Do you find from a preponderance of the evidence that the plaintiff read the parking ticket marked in evidence as Plaintiff's Exhibit 1 prior to leaving his automobile in the lot in question on September 8, 1969?"

The defendant contends that the fact issues submitted were designed to establish that the plaintiff knew the lot closed at 6 o'clock p. m. and that the plaintiff had impliedly agreed to the limitation of liability provision printed on the stub of the parking ticket. The defendant further asserts that once it is established that the defendant knew of the closing time a finding that the automobile was stolen after that time would establish a defense to the suit in that the operator of a parking lot would have no duty to protect the patron's automobile after the time of closing. The defendant also contends that where a patron of a public parking lot is aware of a statement limiting liability which appears on the parking stub given him at the time he leaves his automobile in the lot, he im-

pliedly agrees to this limitation as a provision of the contract of bailment.

Where parking lot owners attempt to limit liability by posting notices on the wall or by printing such a limitation on the claim check, the limitation must be called to the attention of the bailor before they may become part of the bailment contract. *Allright, Inc. v. Elledge*, 515 S.W.2d 266 (Tex. 1974). These provisions are strictly construed against the bailee. *Langford v. Nevin*, 117 Tex. 130, 298 S.W. 536 (1927). In *Elledge* the Supreme Court held that a provision limiting liability of the parking lot owner to a maximum of $100.00 for loss of the bailor's automobile due to theft occasioned by the ordinary negligence of the parking lot owner was enforceable where this provision was inserted in a written contract signed by the bailor.

In this case the limitation provision printed on the claim check was not specifically called to the attention of the bailor at the time he left his automobile at the parking lot. Plaintiff testified that at the time he left his automobile with the defendant he knew that the claim check stated that the lot closed at 6 o'clock. The defendant asserts that this evidence also raises an issue of fact as to whether or not the plaintiff had read the provision limiting liability printed on the claim check.

There is no evidence that the plaintiff read the material appearing on the claim check which was given him on September 8. He was asked: "All right. But, you were aware that those signs read, 'Close at 6 o'clock p. m.' when you *drove up to the lot* and when you left your car on it on September 8, weren't you?" Answer: "I was aware that is what the sign read." Question: "All right. And you were aware that is what the ticket said?" Answer: "Yes." Obviously if the plaintiff was aware that the ticket said "Close at 6 o'clock p. m." when he drove up to the lot that information was obtained from tickets which he had received on previous occasions when he parked at the lot. Plaintiff was never asked if he read the ticket, nor was he asked whether or not he knew of the provision limiting the liability of the lot owner.

We find no evidence that the plaintiff read the parking ticket which was introduced into evidence as Plaintiff's Exhibit No. 1 prior to leaving his automobile in the lot on September 8, 1969. The trial court did not err in refusing to submit this issue.

Notice that a lot will "close at 6 o'clock p. m." does not give notice that cars left after such time will be at the owner's risk. Such a sign might be construed to mean that no automobiles would be accepted after 6 o'clock p. m. The fact that the closing time of the lot was posted on signs and was printed on the claim ticket does not exempt the operator of the lot from the exercise of ordinary care with respect to the safety of the property. *McAshan v. Cavitt*, 149 Tex. 147, 229 S.W.2d 1016 (1950); *Ablon v. Hawker*, 200 S.W.2d 265 (Tex.Civ.App.—Dallas 1947, writ ref'd n. r. e.).

The evidence does not establish whether the automobile was stolen before or after the lot had closed for the day on September 8, 1969. There was testimony that on special occasions the lot stayed open to a later hour. The plaintiff testified that he knew that the lot had been open after the 6 o'clock closing time on previous occasions and that he inquired of the attendant whether or not the lot would be open later on this night. He testified that he was told that it would be open later. There was testimony that it closed at 6:00 p. m. on September 8, 1969. When his car was recovered the trunk was open, his spare tire was missing, and the keys were found in the trunk. The defendant represented that the keys to the car would be in its custody until returned to the owner.

The requested issue related to an immaterial fact. The operator had a duty to remove the keys from the car at closing time and to transport them to the place mentioned in their sign. The trial court submitted a general negligence issue and the jury found that the defendant's negligence proximately caused plaintiff's automobile to be stolen.

In *McAshan v. Cavitt*, 149 Tex. 147, 229 S.W.2d 1016 (1950), with reference to a sign reading "Close at 6 p. m." the Court stated:

". . . It did not clearly give notice that the automobile if left later would be at the owner's risk. It might be construed to mean that no automobiles would be accepted after 6 o'clock p. m. Such a sign will be strictly construed, and will not be interpreted as effecting an exemption from the exercise of ordinary care with respect to the safety of the property if any other meaning may reasonably be ascribed to the language employed. *Langford v. Nevin*, 117 Tex. 130, 138, 298 S.W. 536."

■ Here the sign clearly represented to the patrons that some degree of care would be exercised for the safety of their automobiles after the closing time by reason of the notice that the car keys could be picked up after closing time at another location. No agreement that the bailment would expire at 6 o'clock p. m. will be implied from the fact that the plaintiff knew the signs stated that the lot would close at 6 o'clock p. m. under these circumstances.

The trial court did not err in refusing to submit the requested special issues since they inquired about immaterial facts.

The judgment is affirmed.

## APPENDIX