Nora RAY, Petitioner,

v.

FARMERS' STATE BANK OF HART,
Texas, Respondent.

No. B–7649.

Supreme Court of Texas.

Jan. 17, 1979.

Moran & Miller, Dimmitt, Whittenburg Law Firm, Amarillo, Cary Schachter, Amarillo, for petitioner.

Gibson, Ochsner, Adkins, Harlan & Hankins, A. B. Hankins and Danny M. Needham, Amarillo, for respondent.

POPE, Justice.

The question presented is whether Mrs. Nora Ray, the drawer, or Farmers' State Bank of Hart, Texas, the drawee, is liable for the loss occasioned by a check that a third party altered. In a case tried before the court without a jury, Mrs. Ray recovered judgment for $1,850.00, which was the amount of the alteration. The court of civil appeals reversed the judgment and rendered judgment that Mrs. Ray take nothing. 565 S.W.2d 103. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

The controlling issue in the case is whether Mrs. Ray was negligent as a matter of law. On May 7, 1975, Mrs. Ray, an eighty-year-old lady, was awakened from a nap by a man who was shaking the screen to her front door. He gave his name as Robert Freeman, said he worked for the utility company, and that he needed to check the electrical system of her home because the power was off along the block. Mrs. Ray testified that when she unlatched the screen to look down the street for a utility vehicle, Freeman pushed his way inside the house. He went around the house placing a device

in the electrical outlets and then went outside to check in the garage. While he was outside, as she later discovered, he cut the telephone wire to her house. Upon returning, he told Mrs. Ray that he was not through, but that he was awaiting the arrival of someone else from the utility company. He said that he was going to get a hamburger and would return after lunch, but that she should give him $1.50 for the service charge. Mrs. Ray testified that she could not see what he had done to earn $1.50 but was willing to give him the money to get him out of the house. She reached for her purse, but Freeman picked up her checkbook that was lying on the table telling her that his company required payment by check. He proceeded to fill it in, then shoved it over to her to be signed. She noted to herself that the check was for $1.50 and was in ink so it couldn't be changed. She signed the check and Freeman left.

After waiting a considerable period of time, Mrs. Ray concluded that Freeman was not going to return. She decided to phone the bank to stop payment on the check because he had not earned the money. She then discovered the phone was dead. Mrs. Ray walked down the street to use a neighbor's phone but could find nobody at home. About two hours later, when she finally talked to a lady at the bank, she learned that Freeman had cashed the check and that it was for $1,851.50 instead of $1.50.

When Freeman filled out the check at Mrs. Ray's home, he wrote the figures "1.50" far to the right of the dollar mark, leaving space in which he later added the figures "185". That made the amount appear as $1,851.50. There is some evidence that he also left space on the next line where he wrote the words "one and 50/100". He later placed in front of those words, "Eighteen Hundred & Fifty."

When Freeman presented the check at the bank, the teller required him to produce identification which he did by showing his driver's license and another identification card that showed his picture. Freeman had endorsed the check and beneath his signature he had stamped the words, "Allied Construction and Commercial-Residential."

■ The trial court made a number of findings of fact and also filed conclusions of law. The findings relevant to this appeal are:

1a. The Defendant Bank paid the check in question in good faith and in accordance with the reasonable commercial standards of the Bank's business.

2a. The Defendant Bank paid the check in due course of its banking business.

The relevant "conclusion of law"[1] was that the conditions and circumstances under which Nora Ray signed and delivered the check did not amount to negligence substantially contributing to the material alteration of the instrument as required by Section 3.406 of the Uniform Commercial Code to constitute a defense.

We must begin with article 4.401 of the Code[2] since it sets forth the general rule when a bank may charge an item against a customer's account. It states that a bank may charge against a customer's account any item properly payable from that account. Further, the bank may charge the account if it pays in good faith, even though the item has been altered, but only accord-

---

1. Although this finding appears among the conclusions of law, the designation is not controlling and we may treat it as a finding of fact. *McAshan v. Cavitt*, 149 Tex. 147, 229 S.W.2d 1016 (1950).

2. § 4.401. When Bank May Charge Customer's Account

(a) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft.

(b) A bank which in good faith makes payment to a holder may charge the indicated account of its customer according to
(1) the original tenor of his altered item; or
(2) the tenor of his completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper.
Tex.Bus. & Com.Code Ann. § 4.401 (Tex.UCC).

ing to the original tenor of the altered item. We are here dealing with an alteration as explained by article 3.407(a)(3)[3] since there were additions to Mrs. Ray's check. If we look only to these two statutes, the bank had the right to charge Mrs. Ray's account according to the original tenor of the item —$1.50—because, according to the findings, the bank acted in good faith.

■ We still need, however, to fit article 3.406[4] into the scheme of the statutes. That article cuts off rights that a person might have against a holder in due course or against a drawee or other payor who pays an instrument in good faith and in accordance with reasonable commercial standards of the drawee's or payor's business. This means that Mrs. Ray would be precluded from asserting the alteration against Farmers' State Bank if her negligence substantially contributed to the alteration of the check.

In determining whether the bank may charge Mrs. Ray's account, there are steps that must be taken sequentially. First, the instrument must have been paid in good faith and in accordance with the reasonable commercial standards of the drawee's business. Second, the person seeking to assert the alteration must be found negligent. Third, the negligence must have substantially contributed to the alteration of the instrument.

It can be concluded that the bank did pay the check in good faith and in accordance with reasonable commercial standards. There was a finding of fact to this effect by the trial court, and there was no dispute concerning this issue before the court of civil appeals. The trial court and the court of civil appeals, however, differ on the question of negligence. The trial court found that Mrs. Ray was not negligent under the circumstances, but the court of civil appeals found negligence as a matter of law.

Official Comment 3 to this section of the Uniform Commercial Code includes this explanation of how negligence is to be determined.

3. No attempt is made to define negligence which will contribute to an alteration. The question is left to the court or the jury upon the circumstances of the particular cases. Negligence usually has been found where spaces are left in the body of the instrument in which words or figures may be inserted.

■ As a general rule, the determination of negligence is the province of the trier of fact. *Exchange Bank & Trust Co. v. Kidwell Construction Co.*, 463 S.W.2d 465 (Tex.Civ.App.—Tyler), *writ ref'd n. r. e. per curiam*, 472 S.W.2d 117 (Tex.1971). In determining whether there was any evidence of probative force to sustain the trial judge's finding, the court of civil appeals was required to consider only that evidence favorable to the finding and the judgment rendered thereon and to disregard all evidence to the contrary. The judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it, and a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972 (Tex.1951).

■ When viewed in the light most favorable to the trial court's judgment, we

---

3. § 3.407. Alteration

(a) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(1) the number or relations of the parties; or

(2) an incomplete instrument, by completing it otherwise than as authorized; or

(3) the writing as signed, by adding to it or by removing any part of it.

Tex.Bus. & Com.Code Ann. § 3.407 (Tex.UCC).

4. § 3.406. Negligence Contributing to Alteration or Unauthorized Signature

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. Tex.Bus. & Com.Code Ann. § 3.406 (Tex.UCC).

think there is at least some evidence of probative force to support the trial court's finding. At most, the evidence is conflicting. Under such circumstances, the trial court's finding is binding on the court of civil appeals. It is our opinion that the nature of the evidence introduced at trial was such that reasonable minds might differ as to whether Nora Ray was negligent under the circumstances. The court of civil appeals, therefore, erred in reversing the judgment of the trial court and rendering judgment that Nora Ray was negligent as a matter of law. Because of this determination, we do not reach the causation issue.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

Dissenting opinion by DENTON, J.

CAMPBELL and SPEARS, JJ., not sitting.

DENTON, Justice, dissenting.

I respectfully dissent. I agree with the Court of Civil Appeals.