Ag-Trans-Corp v. Fortenberry 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-174-CV

     AGRICULTURAL TRANSPORTATION CORPORATION,
                                                                                              Appellant
     v.

     FORTENBERRY INSURANCE AGENCY,
                                                                                              Appellee
 

From the County Court at Law No. 2
McLennan County, Texas
Trial Court # 930408-CV-2
                                                                                                    

O P I N I O N
                                                                                                    

      Fortenberry Insurance Agency, appellee, sued Agricultural Transportation, Inc. (ATI),
appellant, alleging that ATI had refused to pay the premium on a specified-vehicle liability policy
the agency had obtained for ATI during 1991-1992. Following a bench trial, the court rendered
judgment against ATI for $7,575.92 in damages, which was the amount of the unpaid premium,
and $3,313.50 attorney's fees. ATI contends the evidence is legally and factually insufficient to
support findings of an oral contract requiring ATI to pay the amount sued for or a breach of such
an agreement. ATI also alleges that, without a contract or breach, the court could not award
attorney's fees. We will affirm.
      Since 1982 Fortenberry Insurance Agency, owned by Jim and Helen Fortenberry, had handled
all of ATI's insurance, including health, worker's compensation, and liability. Prior to forming
his own company in 1982, Jim Fortenberry had serviced ATI's insurance needs for ten years while
employed at another agency. ATI, which hauls agricultural products in leased trucks, must have
liability insurance on its leased vehicles to operate legally in Texas. For several years prior to
1989, Fortenberry had obtained liability coverage for ATI on a "gross receipts policy." The
premium on a gross-receipts policy is neither fixed nor paid in advance; instead, the premium is
paid monthly and is determined by multiplying the insured's monthly gross receipts by a fixed
percentage. Thus, under a gross-receipts policy, ATI's premium was unaffected by the number
of trucks covered by the policy, but was determined solely by the fluctuations in its gross
revenues.
      For policy year 1990-1991, Fortenberry obtained liability coverage for ATI under a "specified
vehicle policy," which requires advance payment of an annual premium based on a fixed charge
for each vehicle covered by the policy. ATI specified the vehicles to be covered and could either
add or delete vehicles during the policy year. When a vehicle is added to a specified-vehicle
policy, the insured must pay an additional fixed premium to cover the vehicle; however, the
insured receives a credit or partial refund of the premium already paid when a vehicle is removed
from coverage. Consequently, depending upon the net additions or deletions during the policy
year, the total annual premium on a specified-vehicle policy can be larger or smaller than the
premium paid in advance when the policy was issued.
      Regardless of the type of policy involved—gross receipts or specified vehicle—the custom and
practice over the years was for Fortenberry Insurance to obtain the coverage and pay the premium
and for ATI to remit its premium payment to the agency.
      The dispute is over payment of the premium for the policy year beginning October 1991. Jim
Fortenberry says that he tried to obtain a gross-receipts policy for 1991-1992, as ATI requested,
but that he could only obtain coverage under a specified-vehicle policy issued by Ranger
Insurance, the same type of policy ATI was then insured under. Fortenberry negotiated with and
arranged coverage through Ranger's general agent, American E&S. Although the premium on
the specified-vehicle policy would have to be paid in advance, Fortenberry devised a plan that
would allow ATI to pay Fortenberry Insurance for the premium on a monthly basis—just as if ATI
were covered by a gross-receipts policy. Under Fortenberry's plan, his agency would use money
ATI had already deposited with it to make a down payment on the premium, and Fortenberry
Insurance would sign a note for the balance due. Then, to determine the amount that ATI would
remit to the agency each month, the company would multiply its monthly gross receipts by 8.23
percent and, as was the custom and practice, pay that amount to the agency. Because ATI was to
be covered by a specified-vehicle policy, the company would still have to specify each month the
vehicles it wanted added to or deleted from coverage.
      Jim Fortenberry claimed that he and Dorothy Strong, ATI's vice-president, had several
discussions about the liability policy for 1991-1992. According to Fortenberry, he told her that
Ranger Insurance would only insure ATI under a specified-vehicle policy, and that he had
arranged with American E&S, Ranger's general agent, for ATI to "pay it out" on a gross-receipts
basis. He explained to Strong, Fortenberry said, that his agency was going to sign and be liable
on a premium note, but that ATI could pay the agency as if on a monthly gross-receipts basis, and
"that's the way we would have to do it." He said Strong "didn't disagree" with this arrangement.
      Accordingly, American E&S paid Ranger Insurance an advance premium of $98,000 for the
policy, which became effective October 25, 1991. Fortenberry Insurance then paid American
E&S a cash down payment out of funds ATI had deposited with the agency and signed a $71,000
premium note to RIFCO, a company that agreed to finance the balance of the premium payment. 
RIFCO, in turn, advanced $71,000 to American E&S to pay the remaining balance of the $98,000
premium. During the policy year, however, ATI made net additions to the list of vehicles covered
by the policy that raised the total premium from its original $98,000 to $102,000. This additional
net premium was added to the balance of the premium note signed by Fortenberry Insurance.
      Fortenberry Insurance paid all of the monthly payments on the premium note to RIFCO. ATI,
however, had remitted its payments to Fortenberry Insurance based on 8.23 percent of its monthly
gross-receipts, which left a $7,575.92 difference between what the agency had paid on the note
and what it had received from ATI. Fortenberry Insurance sued when ATI refused to pay the
deficit. Following a bench trial the court entered judgment against ATI for $7,575.92, plus
attorney's fees of $3,313.50. Also, the court found that: (1) the parties agreed that Fortenberry
Insurance would obtain insurance for ATI and that ATI would pay a reasonable premium for the
coverage; (2) Fortenberry Insurance complied with the agreement; (3) ATI breached the agreement
by failing to pay $7,575.92 of the premium; and (4) Fortenberry Insurance is entitled to reasonable
attorney's fees of $3,313.50. ATI's points attack the legal and factual sufficiency of the evidence
supporting these findings.
      ATI's basic contention is that there is no evidence, or the evidence is factually insufficient,
to prove that the parties ever assented to or had a meeting of the minds on the essential terms of
the agreement and that any agreement was too indefinite or uncertain to be enforced. Thus, ATI
argues that there could be no contract and, without a contract, there could be no recovery for its
breach. The parties never had the requisite meeting of the minds, according to ATI, because they
bargained for and believed they were to receive different things. For example, Fortenberry
Insurance contends the parties agreed that it would obtain liability coverage for 1991-1992 on a
specified-vehicle policy, that it would use ATI's deposit as a down payment on the annual
premium, that it would execute a note for the balance of the premium, and that ATI would
reimburse it for the payments on the premium note. On the other hand, Dorothy Strong said she
believed that ATI was to receive a gross-receipts policy with a monthly premium based on a
percentage of its gross receipts, not a specified-vehicle policy with a fixed annual premium.
      A contract requires a meeting of the minds and assent of the parties on its essential terms. 
See Missouri, K. & T. Ry. Co. of Texas v. Smith, 98 Tex. 47, 81 S.W. 22, 25 (1904). Viewed
in the light of surrounding circumstances, parties can express their assent by either words or
conduct. Slade v. Phelps, 446 S.W.2d 931, 933 (Tex. Civ. App.—Tyler 1969, no writ); McAshan
v. Cavitt, 227 S.W.2d 340, 343 (Tex. Civ. App.—El Paso 1949), aff'd, 149 Tex. 147, 229
S.W.2d 1016 (1950). Whether the minds of the parties met and whether there was an offer and
acceptance is determined by the objective standard of their words and acts, not their alleged
subjective beliefs. Slade, 446 S.W.2d at 933. Moreover, an oral or written contract must be
reasonably definite to be enforceable, i.e., it must be certain enough to define the nature and extent
of the obligation so that the court can fix the legal obligations of the parties. Bendalin v. Delgado,
406 S.W.2d 897, 899 (Tex. 1966); Great West Grain & Seed Co. v. Ray, 204 S.W.2d 26, 28
(Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.). However, even if initially indefinite, a
contract can be enforced if the parties' performance removes the uncertainty. Mooney v. Ingram,
547 S.W.2d 314, 319 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.).
      Viewed in the light of these rules, and using the standard and scope of review for no-evidence
and factually-insufficient evidence, the evidence is legally and factually sufficient to support
findings that the parties agreed that Fortenberry Insurance would obtain a specified-vehicle policy
for 1991-1992 and that ATI would pay a reasonable premium for the coverage. See Weirich v.
Weirich, 833 S.W.2d 942, 945 (Tex. 1992); Sosa v. City of Balch Springs, 772 S.W.2d 71, 72
(Tex. 1989). Jim Fortenberry's testimony, as well as the custom and practice between the parties,
is sufficient to establish these essential terms of the agreement. ATI does not contend, and there
is no evidence, that Fortenberry Insurance ever agreed to pay or be liable for, without
reimbursement, any portion of the premium on this or any other policy obtained for ATI.
      Furthermore, the evidence is legally and factually sufficient to establish that, despite her
assertions to the contrary, Dorothy Strong knew that Fortenberry Insurance could only obtain a
specified-vehicle policy for 1991-1992 and that ATI was operating under that type of coverage
during the policy year. Strong admitted, for example, that she had to add and delete vehicles
during the policy year, acts that are wholly inconsistent with her claim that she believed ATI was
operating under and paying premiums on a gross-receipts policy. Likewise, Jim Fortenberry's
testimony is sufficient to prove that Strong knew how the advance premium on the policy would
be handled between the parties, i.e., (1) the money already deposited by ATI with the agency
would be used as a down payment on the advance premium; (2) the agency would sign a premium
note for the balance; and (3) the company would reimburse the agency for its payments on the
premium as if the company were covered under a gross-receipts policy. Implicit in the
arrangement, as shown by the custom and practice of the parties, was that ATI would fully
reimburse the agency for the premium. Considering the evidence showing full performance by
Fortenberry Insurance and partial performance by ATI, any uncertainty in the agreement was
removed and became immaterial. See Mooney, 547 S.W.2d at 319; Elmendorf v. Mulliken, 231
S.W. 164 (Tex. Civ. App.—El Paso 1921, no writ). 
      Finally, the evidence is legally and factually sufficient to support the finding that ATI
breached the agreement by refusing to reimburse Fortenberry Insurance for $7575.92 of the
premium. Because the evidence is legally and factually sufficient to establish the meeting of the
parties' minds and assent on the essential terms of an oral contract, and a breach by ATI, there
is a legal basis for awarding attorney's fees of $3,313.50.
      We overrule no-evidence points one through four and factual-insufficiency points five through
eight. The judgment is affirmed.
 
                                                                               BOB L. THOMAS
                                                                               Chief Justice
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion issued and filed November 16, 1994
Do not publish 



 12pt">      A:  At this particular time I was selling cars. I was selling the car.
Mr. Green:
      Objection. Nonresponsive nature of the answer.
The Court:
      Sustained.
By Mr. Lieck:
      Q:  Let me rephrase the question. At that time, did that car belong to your mother?
      A:  Yeah.
Mr. Green:
      Objection. Leading the witness.
The Court:
      Sustained.
By Mr. Lieck:
      Q:  Who was the titled owner of that vehicle?
      A:  My mother.
      Q:  Was her name actually on the title or was it in the process of being sold to her?
      A:  It was in the process of being sold.
      Q:  So do you know if the title was held - - the title was not under her name at this point in
time; right?
      A:  No.
       Based on Degree’s testimony we are unable to ascertain who held title to the vehicle at the
time of the search, or even if Degree had the owner’s consent to be in the vehicle. Degree
presented no evidence that he had a protected privacy interest in the vehicle. Because Degree did
not meet his burden of showing a possessory interest in the vehicle he failed to establish standing
to challenge the search. We find as a matter of law Degree failed to establish standing to
challenge the search of the vehicle.
CONCLUSION
      We find the initial traffic stop of Degree was valid; the continued investigatory detention of
Degree was valid; and as a matter of law, Degree did not have standing to challenge the search
of the vehicle. Having overruled all issues raised by Degree on appeal, we affirm the judgment.

                                                                       TOM GRAY
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed July 3, 2002
Do not publish
[CRPM]